WALTER M. B. HARTLEY, Respondent, *v.* EAGLE INSUR-
ANCE COMPANY OF LONDON, ENGLAND, Appellant.

Usury — trial — findings — when the Appellate Division
makes no finding of fact and then draws a conclusion of law,
unsupported by any finding of fact the judgment must be
reversed — when an agreement to pay an amount which may be
more or less than the legal interest, depending upon a reason-
able contingency, not ipso facto usurious — action to cancel
assignment of estate in remainder, and mortgage to secure
the same, given as security for moneys advanced — when the
facts do not warrant the relief demanded.

1. Where the court, upon the trial of an action, instead of
finding either way upon the crucial question of fact in the case,
simply finds the evidence as given by the witnesses upon that
question and then draws a conclusion of law which is unsup-
ported by any finding of fact, the judgment entered thereon must
be reversed.

2. An agreement to pay an amount which may be more or less
than the legal interest, depending upon a reasonable contingency, is
not *ipso facto* usurious, because of the possibility that more than the
legal interest will be paid. Such arrangements, however, will not be
upheld in any case where the purpose is to evade the statutes against
usury, no matter what form the transaction may take. The question
in each case is whether the agreement is fair and reasonable, or a mere
device to evade the usury statutes.

3. Every loan or payment of less than the full present value cal-
culated according to a mortality table, for a remainder interest, is not
*ipso facto* usurious and void. This action was brought to have a
transaction between the parties declared usurious and void and to
direct the cancellation of the assignments and mortgage given by
the plaintiff to defendant to secure moneys advanced. Whether the
loan so secured was usurious depends upon the intent of the parties,
to be determined from all the facts and circumstances in each case.
In this case there is no finding of fact that the assignments and mort-
gage were made as a device for the payment of interest beyond the
legal rate or that the parties had any intention of violating the usury
statutes, and the facts do not warrant a judgment for the relief
demanded. (*Dougherty* v. *Lion Fire Ins. Co.*, 183 N. Y. 302, followed;

*Hall* v. *Eagle Ins. Co. of London, England*, 151 App. Div. 815; affd., 211 N. Y. 507, distinguished.)

*Hartley* v. *Eagle Ins. Co.*, 167 App. Div. 230, reversed.

(Argued October 29, 1917; decided January 8, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 15, 1915, *unanimously* affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Nathan L. Miller, Henry H. Pierce* and *Philip L. Miller* for appellant. Where a contract of loan leaves the rate of interest to be determined by hazard, so that the lender may ultimately receive either more or less than legal interest, as the chance turns out, and the speculation is a real and not a colorable one, the transaction is not within the usury statute. (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Clift* v. *Barrow*, 108 N. Y. 187; *Hall* v. *Daggett*, 6 Cow. 653; *Johnston* v. *Ferris*, 14 Daly, 302; *Trask* v. *Hazazer*, 4 N. Y. Supp. 635; *De Moltke* v. *Ganner & Co.*, 145 App. Div. 766; *Lord* v. *Cronin*, 9 App. Div. 9; *Hagaman* v. *Reinach*, 48 Misc. Rep. 206; *Home Ins. Co.* v. *Dunham*, 33 Hun, 415; *Jestons* v. *Brooke*, Cowper, 793; *Tate* v. *Wellings*, 3 T. R. 531.) The contingency that the defendant in this case would not receive its money back with legal interest was real and not colorable. There was a high probability that the life tenant would survive until the sum paid by the defendant with interest at six per cent would exceed the amount which the defendant was to receive out of the estate. (*Scheffler* v. *M. & St. L. Railroad*, 32 Minn. 518; *Lincoln* v. *Power*, 151 U. S. 436; *Jackson* v. *Edwards*, 7 Paige, 386; *Estabrook* v. *Hapgood*, 10 Mass. 313; *McHenry* v. *Yokum*, 27 Ill. 160; *Schell* v. *Plumb*, 55

N. Y. 592; *Kerrigan* v. *Penn. R. R. Co.*, 194 Penn. St. 98; *Cronkright* v. *Haulenbeck*, 25 N. J. Eq. 513; *Williams Case*, 3 Bland Ch. 186.)

*Joseph M. Lesser* for respondent. The authorities clearly establish that it is not necessary to show an actual vicious and corrupt intent to charge more than the legal rate of interest in order to establish usury. It is sufficient if the intent to take more interest than the statute allows is evident, and that such is the result which the transaction accomplishes. (*Rapelye* v. *Anderson*, 4 Hill, 472; *Fields* v. *Darrin*, 50 N. Y. 437.) The evidence in this case clearly establishes the existence of gross usury on the defendant's part. (*M. K. & T. T. Co.* v. *Mc-Lachlan*, 59 Minn. 468; *Birdsall* v. *Patterson*, 51 N. Y. 43; *Quackenbos* v. *Sayer*, 62 N. Y. 344; *Roux* v. *Rothschild*, 37 Misc. Rep. 435; *Horn* v. *Keteltas*, 46 N. Y. 605; *Susman* v. *Whyard*, 149 N. Y. 127; *Scott* v. *Lloyd*, 9 Pet. [U. S.] 418; *Meaker* v. *Fiero*, 145 N. Y. 165; *Gilbert* v. *Warren*, 19 App. Div. 403; *Terwilliger* v. *Beecher*, 34 N. Y. S. R. 380; *Babcock* v. *Stimmel*, 33 N. Y. S. R. 1005; *Knickerbocker Life Ins. Co.* v. *Nelson*, 7 Abb. [N. C.] 170; *Dry Dock Bank* v. *American Life Ins. Co.*, 3 N. Y. 344; *East River Bank* v. *Hoyt*, 32 N. Y. 118.)

McLAUGHLIN, J. In 1901 the plaintiff became vested with an equal undivided one-fourth interest in remainder, amounting to at least $43,750, in the estate of his grandfather, subject, however, to the life interest therein of his grandmother In July, 1905, in consideration of a loan of $9,500, he assigned to the defendant, through a third party, the sum of $18,400, payable from his share of the estate with interest at six per cent from the death of his grandmother, the event upon which the principal sum became payable. He also executed a mortgage upon certain real property belonging to the estate as further security for the payment of the amount assigned.

At the time the loan was made, plaintiff's grandmother was sixty-nine years old and upon her death defendant would have been entitled, under the assignments, to receive $18,400 from plaintiff's share of the estate, or $8,900 more than the amount which it had loaned to him. This action was brought to have the transaction declared usurious and void and to direct the cancellation of the assignments and mortgages. Plaintiff had a judgment for the relief demanded, which was unanimously affirmed by the Appellate Division, and defendant appeals to this court.

The facts involved in the subject-matter of the litigation are quite similar to those considered by the court in *Hall* v. *Eagle Ins. Co. of London, England* (151 App. Div. 815; affd., 211 N. Y. 507). The defendant, apparently relying upon that authority at the trial, claimed that the assignments and mortgage were in effect and should be adjudged to be collateral security for the repayment of the amount loaned, with interest, as was there done. In the *Hall* case, however, the life estate had terminated less than two years after the loan was made and the plaintiff had tendered to the defendant, prior to the commencement of the action, the amount loaned, with legal interest. This tender was pleaded in the complaint, which alleged that the instruments had been executed and were intended merely as collateral security, and judgment was demanded in the alternative, either that they be adjudged to be held by defendant as collateral security only, or that they be declared usurious and void. At the trial the plaintiff's evidence tended to show that the instruments were actually intended by the parties only as collateral security; but the trial court held there had been a valid purchase and sale of an expectant interest, and dismissed the complaint. On appeal, however, the Appellate Division reversed the trial court and directed the entry of a judgment in accordance with the opinion of the

court. Both parties appealed to this court, where the judgment was affirmed.

In the present case the issue raised by the pleadings was whether the transaction was usurious. This was the only issue and there is an express finding of fact that it was not the intention or desire of the parties that the assignments and mortgage should merely secure the repayment of the amount loaned, with interest. There is, therefore, no ground for claiming, so far as this appeal is concerned, that the judgment should have followed the determination in the *Hall* case. It is proper to state that such claim is not now made, but the defendant insists that the facts found do not establish usury, nor entitle plaintiff to the relief granted. As the judgment of affirmance was unanimous, and no reversible errors in the admission or exclusion of evidence are claimed, the appeal presents only one question, and that is, whether the facts found support the conclusions of law. (*City of Niagara Falls v. N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 610, and cases cited.) That question is one of law and in deciding it the court is not limited to the grounds urged or adopted in the courts below. (*Hirsch v. New England Nav. Co.*, 200 N. Y. 263; *Abbott v. Easton*, 195 N. Y. 372.)

There certainly was no specific agreement for the payment of usurious interest, since the defendant was to receive a lump sum in repayment of the loan, and whether the amount received would be greater or less than the amount loaned, with legal interest, depended, obviously, upon the length of time that the plaintiff's grandmother lived. But since an amount in excess of the loan was to be repaid in any event, we are confronted at the outset of the discussion with the question whether, where the rate of interest depends upon a contingency which *may* render it in excess of the legal rate, the agreement was usurious. It may be conceded that the early

English cases on the subject necessitate an affirmative answer to the question. The rule, as stated in the leading case of *Roberts* v. *Tremayne* (Cro. Jaq. 507), was that " if the casualty goes to the interest only, and not to the principal, it is usury for the party is sure to have the principal again." It is difficult to see any logical reason for this rule, and in this country, while *Roberts* v. *Tremayne* (*supra*) has frequently been cited, the rule has quite generally been modified to the extent of holding that if the casualty goes to the entire interest an agreement to pay interest in excess of the legal rate, depending upon a reasonable contingency which may result in no interest at all being paid, is not necessarily usurious, even though there be an absolute agreement to repay the entire principal. (29 Am. & Eng. Ency. of Law [2d ed.], 486; 39 Cyc. 952; *Potter* v. *Yale College*, 8 Conn. 51; *Clift* v. *Barrow*, 108 N. Y. 187.)

In *Clift* v. *Barrow* (*supra*) the plaintiff had entered into a so-called partnership agreement with a banker under which he was to receive ten per cent interest on all his deposits, payable from the profits of the business, no interest at all being payable unless there were profits. As surviving partner he subsequently sued a debtor of the firm, who claimed that the agreement did not constitute the plaintiff a partner and was moreover void for usury. Upon the latter point this court said: " So long as by the terms of the instrument he was not entitled to interest, unless the profits were enough to pay it, we see no basis for submitting any question of usury to a jury.". (p. 194.)

But if an agreement hazarding the entire interest in consideration of the possibility of receiving more than the legal rate is not necessarily usurious, there is no logical ground for refusing to apply the same principle to a case where only a part of the legal interest is hazarded. This situation arose in *Richardson* v. *Hughitt* (76 N. Y. 55,

59) where the defendant had advanced money to a partnership to be used in its business of manufacturing wagons. The loans were to be repaid with interest at five and one quarter per cent (seven per cent being the legal rate) and in addition the defendant was to receive a quarter of the profits realized from the sale of wagons. In answer to the claim that the agreement was usurious the court said: " As the defendant was only to receive less than seven per cent interest, as a fixed and certain sum, and there is no certainty that the profits, discounts, and interest agreed upon,—five and one-quarter per cent—would exceed, or even amount to seven per cent, it is not apparent that the contract was usurious." While the issue of usury was not directly involved in that case, the language of the court quoted is entirely in accord with the principles announced in other decisions in this state; in fact, in the present case it is at least impliedly admitted that if the amount advanced by the defendant had been the full present value in July, 1905, of the $18,400, payable upon the death of plaintiff's grandmother, the transaction would have been valid. It is obvious, however, even in that case, whether the defendant would actually receive more or less than the legal rate of interest would still have depended upon the length of time that plaintiff's grandmother lived.

I am of the opinion, therefore, that an agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not *ipso facto* usurious, because of the possibility that more than the legal interest will be paid. Otherwise no valid transfer or assignment of an interest dependent upon a life estate could be made for less than the full value. Such arrangements, however, will not be upheld in any case where the purpose is to evade the statutes against usury, no matter what form the transaction may take. (*Meaker* v. *Fiero,* 145 N. Y. 165;

*Quackenbos* v. *Sayer*, 62 N. Y. 344; *Birdsall* v. *Patterson,* 51 N. Y. 43.) The question in each case is, and necessarily must be, whether the agreement be fair and reasonable, or a mere device to evade the usury statutes. This was recognized in the opinion delivered by Presiding Justice INGRAHAM in the *Hall Case* (*supra*) in which he said: " What we have to find in the transaction is the intention of the parties. * * * It was early recognized by the courts that if the form of the contract were to be controlling, the statute against usury would be substantially unenforcible, and thus it was made the duty of the court in each case presented to examine into the substance of the transaction between the parties and determine whether the intent which pervaded it was one which violated the statute." (p. 826.)

In the case now before us there is no finding of fact that the assignments and mortgage were made as a device for the payment of interest beyond the legal rate or that the parties had any intention of violating the usury statutes. The court found only that under the American Experience Tables of Mortality, plaintiff's grandmother, at the time the loan was made, had an expectancy of life of 8.48 years and under the Carlisle Tables of 9.44 years; that under the Carlisle Tables, in July, 1905, the present worth of $18,400 at six per cent, subject to the life estate of plaintiff's grandmother, was $11,470.19; that as the plaintiff received only $9,500, he, therefore, received $1,970.19 less than he should have received; and as a conclusion of law, that the transaction was a loan under which the plaintiff was to repay the defendant more than the loan " and the maximum interest thereon, and is, therefore, usurious and null and void."

There is no finding as to the actual expectancy of life of plaintiff's grandmother, nor that the parties knew when the loan was made, what her expectancy was under the tables referred to; neither is there a finding that they

.intended to provide for the payment of interest in excess of the legal rate. But it is suggested that the first conclusion of law, to the effect that the transaction was a loan of $9,500 by the defendant to the plaintiff under an arrangement by which he was to repay the full amount of the loan " and the maximum interest thereon, and is, therefore, usurious and null and void " may be treated as a finding of fact. A similar contention was made and rejected in *Alcock* v. *Davitt* (179 N. Y. 9). While a conclusion of law that a given transaction was usurious might, under some circumstances, be treated as a finding of fact, I do not think it can be so treated here. It is not denominated a finding of fact, but a conclusion of law, and from the way in which it is stated, I think it was intended to be a conclusion of law, predicated solely upon the proposition that because the defendant, in purchasing or making the loan upon an expectant interest, paid somewhat less than the present value of that interest, calculated at six per cent according to the Carlisle Tables of Mortality, it was guilty of usury and must forfeit the entire amount. As was said by Judge CULLEN in *Alcock* v. *Davitt* (*supra*): " It seems to us that this action presented for determination a very simple question, purely one of fact * * *; that the question has not been decided by the trial court as one of fact; and that in the absence of any reasonably clear determination of the facts on which the rights of the parties wholly depend, we should not be astute in searching through the report of the referee for some pretext for upholding the judgment." (p. 13.)

The tables of mortality are at best only slight evidence of the expectancy of life of any particular person to be considered in connection with proof of his health, constitution, habits and mode of living. (*Schell* v. *Plumb*, 55 N. Y. 592.) Such tables show only the average length of life among the classes whose lives are taken

into consideration in preparing the tables. There are several tables which differ quite widely and it goes without saying that in any given case the habits and manner of living of the individual may be totally different from those of the persons considered in preparing the tables. (*Williams' Case,* 3 Bland, 186; Scribner on Dower [2d ed.], pp. 663–686.) No one would contend that the expectancy of life of a chronic invalid, afflicted with a disease for which there is no known cure, would equal the expectancy given in any table of mortality; and any agreement for the payment of interest in a lump sum, calculated at the legal rate for the expectancy of such an individual, under any table of mortality, would be clearly usurious. If that be so, then the converse must necessarily be true, and it cannot be said that an agreement is invariably usurious because an amount somewhat in excess of the interest calculated according to some table of mortality is to be paid. In such cases the intention of the parties must control and must necessarily be determined.

So here the question is did the parties intend to evade the usury statutes of the state, or was the interest payable so large that, in view of all the circumstances, an intent to provide for the payment of interest beyond the legal rate will necessarily be imputed to them? (*Fiedler* v. *Darrin,* 50 N. Y. 437.) The court did find, as a fact, that over nine years after the loan was made, plaintiff's grandmother was still living. The amount payable, therefore, was not so large that it would have exceeded the legal rate if she lived a comparatively short time beyond her expectancy under the Carlisle Tables. Did the parties, in arranging the loan, intend that the defendant should receive more than the legal rate of interest on the amount loaned? The answer to the question must necessarily depend upon their intent. That was a question of fact, as to which no finding has been made.

As already indicated, the finding on the subject is that according to the more favorable of the two tables of mortality mentioned, the expectancy of the life tenant was 9.44 years and that the then present value of $18,400 at six per cent payable on her death, was nearly $2,000 more than the amount advanced. That finding was not a finding that her expectancy was 9.44 years, but merely that there was some evidence of it. It was by no means equivalent to a finding of usurious intent.

It, therefore, appears that upon the crucial question of fact in the case — was the transaction usurious — no finding has been made and the judgment cannot be allowed to stand. (*Dougherty* v. *Lion Fire Ins. Co.,* 183 N. Y. 302; *Miller* v. *N. Y. & N. S. Ry. Co.,* 183 N. Y. 123; *Alcock* v. *Davitt, supra.*)

In *Dougherty* v. *Lion Fire Ins. Co.* (*supra*) it was held, and the rule is as applicable here as it was there, that where the court, upon the trial of an action, instead of finding either way upon the crucial question of fact in the case, simply found the evidence as given by the witnesses upon that question and then drew a conclusion of law which was unsupported by any finding of fact, the judgment entered thereon must be reversed.

In reaching the foregoing conclusion there is no intention of lessening the protection which the usury statutes were designed to afford. All that is here decided is that every loan or payment of less than the full present value, calculated according to a mortality table, for a remainder interest, is not *ipso facto* usurious and void. Whether usurious depends upon the intent of the parties, to be determined from all the facts and circumstances in each case. Such question has not here been determined and the defendant is entitled to have it determined before compelled to forfeit the amount which it loaned to the plaintiff.

For the reasons given, the judgment appealed from

should be reversed and a new trial ordered, with costs to abide event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN, POUND and ANDREWS, JJ., concur.

Judgment reversed, etc.