LAWRENCE E. BROWN, as Substituted Trustee under the Will of AGNES H. ROBINSON, Deceased, Respondent, *v.* CHARLES A. ROBINSON, Individually and as Trustee under the Will of AGNES H. ROBINSON, Deceased, et al., Respondents, and EAGLE INSURANCE COMPANY OF LONDON, ENGLAND, Appellant.

Remainders — usury — transfer of estate in remainder — deduction of actual expenses of transaction from amount paid to remainderman not an attempt to secure illegal interest so that contract is usurious — when findings of fact do not support conclusions of law and judgment of Appellate Division canceling the transfer for usury.

1. A lender by agreement with the borrower has a right to deduct from the amount to be paid by him on a loan actual expenses incurred in making the loan and such sums as will meet future expenses in connection therewith reasonably and honestly to be anticipated, even though in the latter case the borrower should be ultimately entitled to return of all or part of the sum so retained if the anticipated expenses did not actually accrue.

2. If a deduction be made professedly for such a purpose, but really as a mere pretense and cover and with the intent to secure illegal interest, the act will produce usury. But such an action and deduction are not necessarily usurious; there is no presumption of an illegal or usurious intent and the burden rests upon the party seeking to impeach the transaction for usury to prove the illegal intent and that the transaction is a cover for usury.

3. In this action brought to have the accounts of plaintiff and his co-trustee settled the question litigated arises between one of the defendants, a beneficiary under the will, and the defendant insurance company as to the validity of assignments by such beneficiary of his interest in the trust estate. The beneficiary claims that the assignments were loans and were usurious. The trial court in substance held and found that the transfers executed by the beneficiary to the insurance company were sales and that the amounts paid by it to him were at the date of such payment the fair values computed in accordance with the Carlisle tables of the respective amounts and interests of and in his expectant remainders then transferred by him to it. The judgment directed by the Appellate Division on the findings made by it and those of the Special Term which were allowed

to stand was in substance that all of the transfers executed by the beneficiary and his wife to the insurance company were illegal and void; that the beneficiary was entitled to have each and all of his instruments " delivered up and cancelled and discharged of record." *Held,* that the findings of fact made by the Appellate Division all taken together do not sustain the conclusions of law and judgment adopted and ordered by it canceling the transfers for usury.

4. The finding that the transaction between the beneficiary and the insurance company " was a loan and was usurious and the said alleged assignments, transfers and mortgage all executed in the consummation of said loan are usurious," taken in the light of and modified by other findings fails to show usurious intent and is insufficient to sustain the conclusion that the transaction was usurious, null and void. (*Hartley* v. *Eagle Insurance Co. of London,* 222 N. Y. 178, 185, 189, followed.)

*Brown* v. *Robinson,* 173 App. Div. 583, reversed.

(Argued June 11, 1918; decided October 22, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered September 20, 1916, which modified and affirmed as modified a judgment of Special Term judicially settling the accounts of trustees under the will of Agnes H. Robinson, deceased.

The facts, so far as material, are stated in the opinion.

*Nathan L. Miller* and *Henry H. Pierce* for appellant. Assuming that the transactions attacked here by the three Robinsons were loans and were usurious and void, it is entirely clear that equity will give the Robinsons no relief unless they do equity upon their part by repaying the consideration parted with by the insurance company with legal interest thereon. This was all that the judgment at Special Term gave to the insurance company and its reversal by the Appellate Division was, therefore, erroneous. (*Schermerhorn* v. *Talman,* 14 N. Y. 93; *Vilas* v. *Jones,* 1 N. Y. 274; *Allerton* v. *Belden,* 49 N. Y. 373; *Buckingham* v. *Corning,* 91 N. Y. 525.) The transactions here under consideration were absolute assignments. They were not loans and were

not and have not been found to be covers for loans. The Appellate Division erred in holding them to be usurious. (*Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815; *Matter of Tailer*, 147 App. Div. 741; 205 N. Y. 599; *Delafield* v. *Barlow*, 107 N. Y. 535; *Chambers* v. *Lancaster*, 160 N. Y. 342, affg. 3 App. Div. 215; *Lauer* v. *Dunn*, 115 N. Y. 405; *Brill* v. *Tuttle*, 81 N. Y. 454; *People* v. *N. Y.*, 77 N. Y. 45; *Parker* v. *Syracuse*, 31 N. Y. 376; *Field* v. *New York*, 6 N. Y. 179; *Hall* v. *Buffalo*, 1 Keyes, 193.) Even had the transactions been loans there is nothing in them upon which the Appellate Division was justified in holding them to be usurious *per se*, and that is what the Appellate Division has done. Nor was there any evidence in the case which could have justified any court in finding that although not usurious *per se* they were covers for usury. (*Hartley* v. *Eagle Ins. Co.*, 222 N. Y. 178; *Sumner* v. *People*, 29 N. Y. 337; *Roberts* v. *Trenayne*, Cro. Jac. 507.) The entire interest dealt with under the first transaction was a contingent interest. The entire amount advanced by the insurance company was at hazard and would be lost should George Hyatt Robinson not live to attain the age of twenty-five years. (*Burton's Case*, 3 Coke, 139; *Roberts* v. *Trenayne*, Cro. Jac. 507; *Chesterfield* v. *Janssen*, 1 Atk. 301; 29 Am. & Eng. Ency. of Law [2d ed.], 486; Tyler on Usury, 175; *Force* v. *Provident Washington Ins. Co.*, 35 Fed. Rep. 767; 4 Am. & Eng. Ency. of Law, 746; 26 Cyc. 560.) The charge of five per cent made to cover anticipated costs and expenses was reasonable and customary, and its reservation did not render the transaction usurious. (*International Motor Co.* v. *Palmer*, 92 Misc. Rep. 214; *American Freehold Land Mortgage Co.* v. *Whaley*, 63 Fed. Rep. 743; *London Realty Co.* v. *Riordan*, 207 N. Y. 264; *Morton* v. *Thurber*, 85 N. Y. 550; *Guggenheimer* v. *Geiszler*, 81 N. Y. 293; *Seamen's Bank for Savings* v. *Fell*, 166 App. Div. 271; *Bennett* v. *Ginsberg*, 141 App.

Div. 66.) The respondents are not the "borrower" within the meaning of the usury statute. They asked for and have obtained affirmative equitable relief. Under the settled principles of equity this relief could only be given to them upon their doing equity upon their part, *i. e.*, consenting to a return to the insurance company the consideration which it had paid with legal interest. This is all that the judgment at Special Term awards the insurance company and its reversal by the Appellate Division was, therefore, in any case erroneous. (*Muller* v. *City of Philadelphia*, 208 N. Y. 182; *Mer. Trust Co.* v. *Gimbernat*, 143 App. Div. 305; 206 N. Y. 722; *Fulton Bank* v. *Beach*, 1 Paige, 429; *Mason* v. *Gardiner*, 4 Bro. Ch. 436; *American Freehold Mortgage Co.* v. *Sewell*, 92 Ala. 163; *Hudnit* v. *Nash*, 16 N. J. Eq., 550; 1 Pom. Eq. Juris. § 391; *Wright* v. *Clapp*, 28 Hun, 7; *Wheelock* v. *Lee*, 64 N. Y. 242; *Buckingham* v. *Corning*, 91 N. Y. 525; *Schermerhorn* v. *Talman*, 14 N. Y. 93.)

*Charles H. Tuttle, Martin A. Schenck, Isidor J. Kresel* and *H. D. Luce* for George H. Robinson et al., respondents. The Appellate Division has found as facts, upon ample evidence, that the transaction was a loan; that the discount exceeded by at least $9,345.29 the maximum rate of interest; that the deduction of five per cent was not for genuine and legitimate reasons, and that the loan was usurious. Consequently, these questions cannot now be reargued; but, if they could be, they have been rightly decided. (*Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815; 211 N. Y. 507; *Leavitt* v. *Enos*, 155 App. Div. 584; *Otten* v. *Freund*, 150 App. Div. 434; *Wetzlar* v. *Wood*, 143 App. Div. 311; 154 App. Div. 890; 214 N. Y. 639; *Mer. Trust Co.* v. *Gimbernat*, 134 App. Div. 410; *Todd* v. *Brown*, 177 App. Div. 397; *Grannis* v. *Stevens*, 216 N. Y. 583; *Robertson* v. *Merwin*, 154 App. Div. 723.) The borrowers themselves invoked the statute against

usury, and their right to do so was not affected by the circumstance that they asked in their pleading that the fund in court, when freed of the claims of the Eagle Company, be delivered to the trustee under the trust agreement which they had executed for their own benefit. Moreover the statute was being used not as a sword but as a shield and consequently could be invoked by any party in interest. (*Muller* v. *City of Philadelphia,* 208 N. Y. 182; *Mercantile Trust Co.* v. *Gimbernat,* 143 App. Div. 305; 134 App. Div. 410; 206 N. Y. 722; *Vanderveer* v. *Holcomb,* 17 N. J. Eq. 87; *Smith* v. *Robinson,* 10 Allen, 130; *Knickerbocker Trust Co.* v. *Oneonta,* 188 N. Y. 38; *Strauss* v. *Hanover Realty Co.,* 67 Misc. Rep. 572.) The transaction must fall because the principle on which the papers were admittedly prepared, to wit, that " where there is no personal obligation to pay there can be no usury," was indirectly but no less surely violated in the papers themselves, and as a legal proposition has broken down and been repudiated by the courts. (*Hall* v. *Eagle Ins. Co.,* 151 App. Div. 815; 211 N. Y. 507.)

*Alvin C. Cass, Charles L. Appel, Julius J. Popper* and *Samuel C. Duberstein* for Benno Lewinson, as trustee in bankruptcy of George H. Robinson, respondent. The instruments executed by George Hyatt Robinson contain intrinsic, convincing evidence that the transaction was a loan, and usurious. (*Fiedler* v. *Darrin,* 50 N. Y. 437; *Wetzlar* v. *Wood,* 143 App. Div. 316.) The only contingency in all of the Robinson loans was that of the death of Robinson. Insurance against that risk charged against Robinson and included in the amount of the estate assigned to it to repay its advance ended that contingency. (*People* v. *C. A. L. Ins. Co.,* 154 N. Y. 195.) The test of sale or loan is that of substantial hazard. (*Mooney* v. *Byrne,* 163 N. Y. 87;

*Quackenbos* v. *Sayer*, 62 N. Y. 344; *Baker* v. *Close*, 137 App. Div. 526; *Teyson* v. *Richards*, 3 H. & J. 109; *Hartley* v. *Eagle Ins. Co.*, 222 N. Y. 178; *Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815; 211 N. Y. 507; *Meaker* v. *Fiera*, 145 N. Y. 165; *Robertson* v. *Merwin*, 154 App. Div. 723; *Wetzlar* v. *Wood*, 143 App. Div. 311; *Mercantile Trust Co.* v. *Gimbernat*, 134 App. Div. 305; 206 N. Y. 722.)

*Thomas Berry* for Mary M. Robinson, respondent.

HISCOCK, Ch. J. This action was brought by the plaintiff to have the accounts of himself and the defendant Charles A. Robinson, as trustees under the will of Agnes Hyatt Robinson settled. There were joined in the action as defendants besides plaintiff's co-trustee, George Hyatt Robinson a son of and beneficiary under the will of Mrs. Robinson, and various corporations which claimed an interest by reason of various alleged transfers in the contingent interest of Robinson under his mother's will. Among these parties was the appellant Eagle Insurance Company with whose rights, of the alleged transferees, we alone have to deal. By joining these transferees it was intended to have various conflicting claims between them and Robinson litigated and settled and this has happened, at least in the case of the said insurance company, it having been held that the transfers executed by Robinson to it were infected with usury and void.

After setting forth various formal matters and the execution by Robinson and his wife to the insurance company and others of various transfers of his interest in his mother's estate and which are the subject of the present controversy, the complaint alleges " that as the plaintiff is informed and believes, the said defendant George Hyatt Robinson has also executed an instrument assigning to the defendant Carnegie Trust Company, as trustee for himself and others, all of his remaining interest

in the corpus of said trust estate," and amongst the prayers for judgment is the one that the court " shall determine and adjudge as to the validity of the various assignments made by the said George Hyatt Robinson and also the interests of the various parties to this action."

The insurance company first answered in this action and alleged that the assignments executed to it were " good, valid and subsisting assignments of the remainders (to which Robinson was contingently entitled) after the termination of the various trusts to the extent of said assignments and prior to all other interests in said remainders." It did not deny the allegation of Robinson's assignment to the Carnegie Trust Company, which was subsequent to its transfers, but asked judgment that defendant be adjudged entitled to such interests in such remainders.· Robinson and his wife answered separately and in addition to the various other admissions and denials each alleged that the transfers to the insurance company although absolute in form were loans and usurious and each separately admitted that he or she in connection with the other had executed an instrument assigning and transferring all of the interests of the wife " and her husband, the defendant George Hyatt Robinson in the principal of the estate of  *  *  * said husband's mother, Agnes Hyatt Robinson, deceased, to the defendant Carnegie Trust Company of ·the City of New York, as trustee for said George Hyatt Robinson, his wife  *  *  *,  and the child of said George Hyatt Robinson  *  *  *  and others," and each of said defendants in the prayer for relief in substance asked that the assignments, transfers· and mortgage to the defendant Eagle Insurance ·Company be declared void and of no effect and " that the said Eagle Insurance Company  *  *  *  be directed to deliver up the same and all other writings given by " the defendant Robinson and his wife in connection therewith and that the same

be canceled; also that the rights of the defendants to the trust fund and property in question be ascertained so that the rights of the defendant Robinson and his wife thereto " may be settled, and the income and principal thereof be paid over and disposed of according to the will of the defendant's (husband's)  *  *  * mother,  *  *  * and according to the trust agreement executed " by Robinson and his wife to the Carnegie Trust Company.  There was no offer in the pleadings or-upon the trial that as a condition of the relief prayed for the defendants or 'either of them should repay the amounts actually received on said alleged loans.

On the trial the following facts amongst others were found:  Agnes Hyatt Robinson died leaving an estate consisting of personal property amounting at the time of the trial to something in excess of $200,000 and certain real property the value of which does not appear.  By her will she created two trusts for the benefit of her son Charles Hyatt Robinson, the payment of the principal of which to him was in each case contingent.  Under the first trust he was to receive the principal of the fund provided when he reached the age of twenty-five years. By the provisions of the second trust he was to receive the principal on the double contingency that he survived his father and reached the age of twenty-five years.

In 1907 and a short time after he had passed the age of twenty-one years Robinson through brokers and attorneys in New York city and a solicitor in London made application to the appellant, which was an English corporation chartered to do insurance business and also to loan money on and purchase expectancies, to advance moneys to him on a purchase of certain interests or shares in his expectancies under his mother's will.  The result of this application and of the negotiations which followed was that the appellant paid to him the sum of $70,000 in addition to certain sums retained by it as premiums

for insurance on Robinson's life and the sum of 5% for apprehended expenses in connection with the transfers and took from him two transfers of parts of his contingent interest under the first trust created by his mother's will aggregating $96,250; also advanced to him the sum of $17,350 exclusive of insurance premiums and 5% for apprehended expenses as in the preceding case and took from him a transfer of part of his contingent interest under the second trust created by his mother's will amounting to $45,400 and also advanced to him the sum of $12,650 exclusive of insurance premiums and 5% for apprehended expenses and took an assignment of part of his contingent interest under the second trust created by his mother's will amounting to $40,000. Robinson and his wife also executed a mortgage on the former's interest in the real estate of his mother in which he had a contingent interest, to secure the payment of the sums transferred as aforesaid.

In each case the instrument executed by Robinson and his wife was in form an absolute sale and transfer of his interest in his mother's estate to the extent stated. There was no personal obligation of any kind upon his part except the covenant that at the time when each of said instruments was executed the property held by the trustees for the contingent benefit of Robinson in each trust consisted of real and personal property having " a clear market value   *   *   * over and above all encumbrances " of $140,000. In the case of the last transfer Robinson also retained the right within six months after reaching the age of twenty-five years, provided that his father was still living " to repurchase the said sum of $40,000 hereby assigned " upon payment " of the sum of $20,240 with interest thereon " from the date when Robinson attained his majority to the date of payment.

Upon these and other facts which will be stated in

connection with the discussion of specific points the trial court in substance held and found that the transfers executed by Robinson to the insurance company were sales and that the amounts paid by it to him were at the date of such payment the fair values computed in accordance with the Carlisle tables of the respective amounts and interests of and in his expectant remainders then transferred by him to it. The court, however, held, as it is assumed because of a misconception of the effect of a decision made by the Appellate Division at about that time, that the transfers were in effect equitable mortgages of his interest and in accordance with these views judgment was directed for the insurance company on the issues between it and the Robinsons for repayment of the amounts advanced by it to him together with interest. The insurance company took no appeal from this judgment.

The Appellate Division took a different view of the transactions. It took the view that they were not sales and absolute transfers by Robinson of certain interests in his expectant remainders, but amounted to and were loans which were cloaked in and covered by the appearance of a sale. Said court likewise made findings that the amounts paid by the insurance company to Robinson with interest and certain insurance premiums added were very much less that the present values of the sums transferred by him to it computed according to the Carlisle tables and also made findings of fact and drew conclusions of law which stated that said loans were usurious and void, it being claimed, however, by the appellant that such findings of fact are so connected with and limited by certain other findings that they do not sustain and warrant the conclusion of usury and illegality. The judgment directed by the Appellate Division on the findings made by it and those of the Special Term which were allowed to stand was in sub-

stance that all of the transfers executed by Robinson and his wife to the insurance company were illegal and void; that Robinson was entitled to have each and all of the instruments " delivered up and cancelled and discharged of record " and that the insurance company " should be forever restrained and enjoined from proceeding in any manner whatsoever against the said George Hyatt Robinson and his wife * * * or against the estate of Agnes Hyatt Robinson, deceased." Thus on the prayer of the defendants Robinson, the Appellate Division has granted to them what is claimed by appellant to be affirmative equitable relief and judgment has been declared granting such equitable relief without any condition that the Robinsons repay the amounts actually received by them from the insurance company in said transactions.

Under these conditions a majority of the judges concurring for reversal of the judgment appealed from are of the opinion that such reversal might well be placed upon the proposition that Robinson sought and obtained affirmative equitable relief in this proceeding; that he occupies the position of being a beneficiary under a trust created by the conveyance to the Carnegie Trust Company above mentioned and not the position of a " borrower " within the provisions of section 377 of the General Business Law (Cons. Laws, ch. 20) so as to be exempt from the general principle that one who seeks relief from a court of equity must do equity (*Schermerhorn* v. *Talman,* 14 N. Y. 93; *Wheelock* v. *Lee,* 64 id. 242, and *Wright* v. *Clapp,* 28 Hun, 7); that, therefore, it was necessary for him to repay the amount actually advanced by the appellant as a condition of having the assignments to it canceled and delivered up. It becomes unnecessary, however, to follow this question to a final decision in view of the conclusion we have reached that the judgment should be reversed upon the other proposition urged by the

appellant that the findings of fact made by the Appellate Division do not sustain the conclusions of law and judgment adopted and ordered by it canceling Robinson's transfers for usury.

While the evidence appears to me to labor somewhat under the burden which has been imposed upon it of sustaining the findings that several written instruments and much correspondence all showing absolute sales and assignments of Robinson's interest in his mother's estate merely amounted to security for a loan, still there may be a minimum of testimony which sustains this view and I shall adopt it in the discussion of the proposition outlined.

It is necessary, however, that in entering upon this discussion we should eliminate from consideration much that is said in respondent's brief. With much vigor it is asserted that the methods of appellant are grasping and not commendable; that some of the persons who as brokers and attorneys appeared in the consummation of the present transactions were the same ones who had attracted unfavorable attention in other somewhat similar transactions; that much of the money nominally paid to Robinson was really paid to these brokers and attorneys and to usurious lenders; that Robinson was hurried to the execution of his assignments without opportunity for consideration or consultation with counsel. While these assertions are made to be entertaining by the form of their expression, they are utterly irrelevant and immaterial. The appellant's loans have been defeated not because its general methods were not altruistic but because these particular loans were infected with usury; the brokers and attorneys who attended Robinson do not appear to have been different or better than those who are generally found in the company of a spendthrift heir but the findings are expressly to the effect that they were his agents rather than those of the appel-

lant; it has been found that the whole sum of $100,000 advanced by the appellant was paid to Robinson, although subsequently he paid portions of it to other people; his transfers have not been set aside on any theory that they were procured by fraud, deception or ignorance but simply on the ground that they were part of a transaction which embraced usury.

While the findings of the trial court treated each advance made by the appellant and the corresponding assignments or assignment by Robinson as constituting a complete and separate transaction, and while the Appellate Division in its first findings adopted this same view, except that it considered the transaction to be a loan instead of a purchase, in its last findings of fact it held that all the advances made by the appellant and all of the transfers made by Robinson constituted but one transaction; that the appellant advanced the single and entire sum of $100,000 and received therefor all of the assignments. While either view is doubtless open to the appellant under the somewhat contradictory findings of the Appellate Division, I shall consider the case on the latter theory of a single loan.

On that theory as found by the Appellate Division the defendant advanced to Robinson the sums respectively of $70,000, $17,350 and $12,650 aggregating $100,000 and in return therefor Robinson transferred to it the sum of $96,250 payable out of his remainder under the first trust in his mother's will and the sums of $45,000 and $40,000 payable out of his remainder under the second trust in his mother's will, all aggregating $181,250. The present values of said sums " computed at 6% upon the Carlisle tables of mortality making allowance for the cost of insurance " were respectively $75,674.64, $17,899.85, and $15,770.18, and thus on the " loan made to the defendant George Hyatt Robinson * * * by the defendant Eagle Insurance Company

\* \* \* in the total sum of $100,000 \* \* \* the defendant George Hyatt Robinson was to pay the sum of $9,345.29 (so erroneously stated in the findings instead of $9,344.67) over and above the maximum rate of interest besides the cost of insurance." It seems to me that the finding that the value of the sums transferred exceeded by $9,345.29 the sums paid plus the maximum rate of interest is to the extent of $5,000 unsupported by any testimony.

The undisputed evidence shows that in making to Robinson the payments which it did appellant retained from the present values of the sums assigned the sum of 5% which was deducted to cover future expenses in respect of said remainder and the collection thereof, so that what was paid to Robinson on this version was really $100,000 plus the cost of insurance, allowed by the Appellate Division, and 5% upon the present values deducted as against future expenses not allowed by that court.

I suppose that there is no question that a lender by agreement with the borrower has a right to deduct from the amount to be paid by him on a loan actual expenses incurred in making the loan and such sums as will meet future expenses in connection therewith reasonably and honestly to be anticipated, even though in the latter case the borrower should be ultimately entitled to return of all or part of the sum so retained if the anticipated expenses did not actually accrue. (*Harger* v. *McCullough*, 2 Den. 119; *Thurston* v. *Cornell*, 38 N. Y. 281; *Houghton* v. *Burden*, 228 U. S. 161; *Matter of Mesibovsky*, 200 Fed. Rep. 562.) If a deduction be made professedly for such a purpose, but really as a mere pretense and cover and with the intent to secure illegal interest, the act will produce usury. But such an act and deduction are not necessarily usurious; there is no presumption of an illegal or usurious intent and the burden rests upon the party

seeking to impeach the transaction for usury to prove the illegal intent and that the transaction is a cover for usury. (*Matthews* v. *Coe*, 70 N. Y. 239; *White* v. *Benjamin*, 138 id. 623, 624.) The Appellate Division although disallowing this 5% in computing the present values of the sums assigned to appellant, did not in any manner find that the retention of said sum was unreasonable, a pretext or with usurious intent on the part of the lender. It seems to me therefore that this sum of 5% or $5,000 is to be credited to the appellant in computing the sums paid by it and if this is done the excess found by the Appellate Division will be reduced to $4,345.29.

There is still another uncontradicted feature affecting the present value of the sum of $40,000 transferred by Robinson under his third assignment, and that was the right reserved by him to repurchase the said sum of $40,000 for $20,240 within six months after he became twenty-five years of age (March 21, 1911) if his father should then still be living. Applying this right to the transaction in the character of a loan it amounted to a privilege to pay the loan at the date fixed at the amount stated. There was no evidence and no finding of the present value in 1907 of this sum of redemption and without such it was impossible to determine the present value of the sum transferred.

We next come to a consideration of the hazards or contingencies which affected the remainders which Robinson assigned and which rendered uncertain their values and made uncertain the payment not only of interest but also of principal. The findings of the Appellate Division it will be remembered are that the sums assigned had a certain present value in 1907 on a computation of probabilities based simply on the Carlisle tables. There was no absolute finding of actual value, but only of value according to one line of evidence.

It is believed and will be assumed that the hazard, originally existing, of Robinson's death before his expectancies took effect has been eliminated for the purposes of this discussion, although the appellant vigorously argues otherwise. Attention has been called to the allowance in the findings of credit to the appellant for premiums of insurance on Robinson's life in the computations which have been made. It was found that as part of the transactions and with his knowledge the appellant insured the life of Robinson for the amounts advanced; against death before reaching the age of twenty-five or before the decease of his father and that it retained from the amounts otherwise to be paid to him the premiums on the cost of this insurance. Under these circumstances I think the appellant must be charged with having taken out insurance against this hazard and with having eliminated this contingency, even though it elected itself to carry the insurance.

Assuming, however, that this was so there remained other hazards. As has been pointed out there was no personal guaranty of any kind by Robinson, except the one that at the time the transfers were made in 1907 the clear value of each half of the estate out of which he was assigning the various sums which have been stated amounted to $140,000. There was no guaranty or covenant, as seems to be stated by respondent's counsel, that the estate would be equal to the amounts transferred to the appellant when the assignments became effective. There was, therefore, the danger that the estate through depreciation or bad management might sink to an amount less than the aggregate sums which were being transferred. One trustee was a non-resident and under no bonds; another trustee had been removed for improper investments; the third trustee who is now seeking to be discharged gave bonds. The history of the estate as disclosed in the present case shows that it

would have been no fanciful assumption at the time the transfers were executed that the estate might depreciate below the amount required to make them good.

In addition there was the uncertainty when the assignments of the two sums aggregating $85,000 out of Robinson's remainder under the second trust of his mother's will would become effective, for this was contingent not only upon his own life but upon the death of his father who was sixty-two years of age at the time the transfers were executed. There is no finding of the expectancy of the father's life at that time. It is, however, stated in the appellant's brief without contradiction so far as we can discover, that this expectancy according to the Carlisle tables was 13.31 years, and upon this presumption we assume the computations of the Appellate Division were based. The record before us shows that the father is a party and, therefore, alive after eleven years at the age of seventy-three years, and his expectancy of life on the basis of that age is still about eight years. It, therefore, may very well result that the computations of the Appellate Division may prove erroneous and that the sums assigned not only not be in excess of the amount loaned with interest, but considerably less.

Down to this point, therefore, we have a situation precisely similar to that which was considered in *Hartley* v. *Eagle Insurance Co. of London* (222 N. Y. 178, 185, 186). A lender has taken transfers of expectancies the value of which computed simply according to the Carlisle tables exceeds by a comparatively small amount the amount loaned and legal interest, but which expectancies are subject to hazards which may defeat not only the payment of interest but the payment of full principal. Therefore what was said and held in that case is applicable. " There is no finding as to the actual expectancy of life." " The tables of mortality are at best only slight evidence of the expectancy of life of any particular person to be

considered in connection with proof of his health, constitution, habits and mode of living * * * and it cannot be said that an agreement is invariably usurious because an amount somewhat in excess of the interest calculated according to some table of mortality is to be paid. In such cases the intention of the parties must control and must necessarily be determined." And in that case it was held that the conclusion of usury by the Appellate Division could not follow as matter of law from such excess in value of expectancies and was not sustained by the necessary finding of fact that the excess was intended as a cover for usury. It is, however, urged that the defect in findings of fact which existed in the *Hartley* case has been supplied and that there is here made the necessary finding of usurious intent. The finding which is pointed to as sustaining this contention is the one " That the transaction between the defendants George Hyatt Robinson and his wife and the defendant Eagle Insurance Company of London was a loan and was usurious, and the said alleged assignments, transfers and mortgage all executed in the consummation of said loan are usurious."

The intent to take usurious interest requires such purpose on the part of the borrower as well as upon the part of the lender. (*Morton* v. *Thurber*, 85 N. Y. 550; *Guggenheimer* v. *Geiszler*, 81 N. Y. 293.) Such an intent when consummated draws after it not only civil penalties by way of forfeiture, but constitutes a crime. And before holding that a person has been guilty of such an offense it should have been clearly and decisively proved and found and not have been left to inference and implication. (*White* v. *Benjamin*, *supra*; *Matthews* v. *Coe*, *supra*.) If we should think that there might be implied from the finding which has been quoted, when considered simply by itself, the finding of usurious intent, this view in my opinion is absolutely prohibited when this finding

is considered in the light of other findings with which
it is connected both by position and verbiage; and, of
course, the scope and interpretation of a finding must
be determined in the light of other findings to which
it is related.  When we consider all of the findings made
by the Appellate Division upon this subject we find
that they follow one another from the first to the last
one which has been quoted in such logical and closely
connected sequence as to prevent the interpolation by
implication of any finding of a fact other than those
expressly stated.  Taking up each of the transactions
between appellant and Robinson it is found that " The
most that the said  *  *  *  Robinson actually did
receive, for the alleged assignment by him of the net
sum " transferred in that particular transaction, was
a certain sum named; that the true value of the sum so
assigned, allowing for interest at six per cent and insurance
and computed according to certain tables, was a certain
named sum in excess of the amount received by
Robinson; that the sum advanced by the appellant was
loaned to Robinson and that he agreed to pay the sum
transferred by him for the use thereof " or the sum
(naming the excess value of the amount assigned) over
and above the maximum rate of interest."  Then the
finding is made which aggregates all of the advances
made by the appellant to Robinson and all of the assumed
excess in valuation of sums transferred by Robinson
over amounts advanced by the appellant as these were
found in the case of each of the transactions covered by
the preceding findings.  This summarizing finding is
" That the aforesaid alleged assignments, transfers and
mortgage were all executed and delivered in the con-
summation of a loan made to the defendant George
Hyatt Robinson and his wife, by the defendant Eagle
Insurance Company of London, in the total sum of one
hundred thousand dollars, for the use of which the

defendant * * * Robinson was to pay the sum of
$9,345.29 over and above the maximum rate of interest,
besides the cost of insurance." Then directly follows
as the final and concluding deduction of fact the one
which is relied on and which has been quoted, that the
transaction was a loan and usurious. It was not neces-
sary, in order to show that the last conclusion of fact
was regarded as conclusively and inevitably resulting
from the prior findings, to use the word "therefore"
in saying that the loan was usurious. The findings
show this without the use of any particular connecting
word, as they proceed from one step to another until
there is reached what was regarded as the last and
unavoidable one in the series. The line of reasoning is
clear. The sums transferred by Robinson, their value
being computed according to one particular table, exceeded
by a certain amount the sums loaned with interest; there-
fore, the loans are necessarily and as matter of course
usurious and void. Evil intent is immaterial.

If any argument aside from an examination of these
connected and sequential findings themselves were
necessary to convince us that the last and concluding
finding of usury is based exclusively upon the prior
ones and that it is expressive of the theory that the
conclusion of usury followed without escape and as
a matter of course from an agreement to take hazardous
expectancies found on one line of evidence to have been
of greater value than was allowed by appellant, this
argument could be found in one of the conclusions of
law which was adopted. This conclusion reads: "That
the transactions between the defendants * * *
Robinson * * * and the defendant Eagle Insurance
Company * * * whereby the said defendant George
Hyatt Robinson was to pay the said defendant Eagle
Insurance Company of London, more than the full amount
of the loan, to-wit: one hundred thousand dollars

($100,000), and the maximum rate of interest thereon, is *therefore* usurious, null and void." There is no suggestion here of the necessity of any finding of unlawful intent, but only the thought that a promise to pay a sum contingently in excess of legal interest necessarily made the loan usurious and void.

In conclusion as throwing light upon the entire decision, it is to be remembered that this case was decided by the Appellate Division shortly after the *Hartley* case and before that case had been decided in this court. The opinion by the Appellate Division in this case with its long quotation from its opinion in the *Hartley* case seems to make it perfectly evident that the court was pursuing in this case the same theory by which it reached its judgment in the *Hartley* case and which judgment was reversed by us for reasons which have been stated.

In accordance with these views it seems to me that the judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

· HOGAN, CRANE and ANDREWS, JJ., concur; CARDOZO, J., concurs in result only so far as relates to the loan of $17,300; COLLIN, J., dissents; POUND, J., not voting.

Judgment reversed, etc.