367 F.2d 513
 In the Matter of Donald S. POTTER d/b/a Potter Real Estate Co., Bankrupt.
Phillip J. McNELLIS as Trustee, Plaintiff-Appellant and Cross-Appellee,
v.
Herman DUBNOFF, Defendant-Appellee and Cross-Appellant.
 No. 460.
 Docket 30428.
 United States Court of Appeals Second Circuit.
 Argued June 23, 1966.
 Decided September 21, 1966.
 
 Laurence Sovik, Syracuse, New York City (Smith, Sovik, Terry, Kendrick), McAuliffe & Schwarzer, Syracuse, N. Y., on the brief), for appellant.
 Victor Levine, Syracuse, N. Y. (Eli Gingold, Syracuse, N. Y., on the brief), for appellee.
 Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 This case poses the question whether a trustee in bankruptcy can recover from a creditor principal and interest paid by an insolvent bankrupt to the creditor on allegedly usurious loans. Phillip J. McNellis, as trustee in bankruptcy of the estate of Donald S. Potter, claimed before the referee in bankruptcy that loans by creditor Herman Dubnoff were tainted with usury. The referee's decision was in large part favorable to the trustee, but the United States District Court for the Northern District of New York, Edmund Port, J., reversed, and remanded the proceedings. For the reasons set forth below, we affirm the action of Judge Port.
 
 
 1
 As sometimes happens, it takes almost as long to explain what the issues on appeal are as to deal with them. The key facts are as follows: On May 28, 1963, Potter, a real estate broker, filed a voluntary petition in bankruptcy and was adjudicated bankrupt. According to the referee, although Potter had been insolvent since January 1, 1958, Dubnoff made a number of short-term loans to Potter from November 1959 to the end of 1962 at times when Dubnoff knew or should have known that Potter was insolvent. Claiming that the interest on the Dubnoff loans ranged from 50 to 100 per cent, the trustee sought to expunge a claim by Dubnoff against the estate for $37,500. The trustee also asserted two counterclaims against Dubnoff, one for $69,834.70 of allegedly usurious excess interest paid by the bankrupt on the Dubnoff loans over a period of years, and the other for "any payments of principal and interest" made to Dubnoff in the year prior to bankruptcy. The referee found that the Dubnoff transactions were indeed usurious loans; accordingly, he expunged Dubnoff's claim, but limited recovery on the trustee's counterclaims against Dubnoff to payments made in the one year prior to the bankruptcy petition. The referee awarded judgment for $62,628.82 on the counterclaims, $18,678.82 for usurious interest and $43,950 for fraudulent repayment of principal. Both the trustee and Dubnoff petitioned for review. The district court reversed the referee's central finding of usury because it contained no specific determination as to the intent of the parties when the loans were made, although the court did affirm many of the referee's findings of fact; both parties appeal.
 
 
 2
 The trustee claims in this court that Judge Port's decision was improper, inter alia, because there was no need to find usurious intent. He argues that he does not seek relief under New York General Business Law, McKinney's Consol.Laws, c. 20, § 372,[1] which permits recovery of usurious interest paid within one year before the action is brought. Instead, he urges that payment of interest and principal on a usurious debt is ipso facto a fraud upon other creditors if made when the debtor is insolvent, regardless of the borrower's and lender's intent, under New York Debtor & Creditor Law, McKinney's Consol. Laws, c. 12, §§ 270-275, and sections 67d(1) and (2) of the Bankruptcy Act, 11 U.S.C. § 107(d) (1) and (2), both dealing with fraudulent transfers. Under the former statute, the trustee seeks return of $69,834.70 of usurious interest payments made by Potter after January 1959, not just the $18,678.82 made in the year prior to the bankruptcy petition, as the referee held. Under the latter statute, the trustee claims he is entitled to recover $69,950 of principal payments by Potter within one year of bankruptcy on usurious loans, instead of the $43,950 allowed by the referee. The trustee, therefore, seeks reversal of the district court, reinstatement of the judgment expunging Dubnoff's claim, and judgment against Dubnoff for the sums of $69,834.70 and $69,950, or a total of $139,784.70.
 
 
 3
 If it were true that the trustee did not have to prove usury to recover, then the remand on the issue of intent would be improper, as the trustee claims. However, usury is the keystone of the trustee's case. The argument that various payments of interest or principal were fraudulent because they were transfers made without "fair consideration" requires a determination that there was no obligation to make the payments; this, in turn, depends upon the conclusion that the loans giving rise to the obligation were usurious. It is true that a recovery under the New York Debtor & Creditor Law — unlike the remedy provided under New York's usury law[2] — would not be limited, as the referee held, to sums paid in the year prior to bankruptcy, but the threshold question remains whether the referee was correct in characterizing the Dubnoff loans as usurious. The referee expressly stated that his finding of usury was based entirely upon a set of calculations by the trustee's accountant (Exhibit #55) derived from the bankrupt's financial papers. That exhibit shows the total interest payments made by Potter to Dubnoff from 1959 through 1962, the amount payable at one-half per cent of the monthly balance owing, i. e., six per cent per year, and the excess paid over the legal one-half per cent per month.
 
 
 4
 Judge Port held that a bare finding that interest payments exceeded the rate of six per cent is an insufficient premise for a conclusion of usury, since it fails to establish that the parties possessed the requisite intent to evade the usury law. We agree with this conclusion, primarily on the authority of Rosenstein v. Fox, 150 N.Y. 354, 44 N.E. 1027 (1896). The trustee claims that In re Gurinsky, 196 F.2d 296 (2d Cir. 1952), affirming 105 F.Supp. 42 (S.D.N.Y. 1951), indicates that remand here was unnecessary and improper. But in that case there was testimony by the bankrupt that when the loans were made there was an agreement to pay usurious interest. We acknowledge that there may be situations where "the interest payable [is] so large that, in view of all the circumstances, an intent to provide for the payment of interest beyond the legal rate will necessarily be imputed * *." Hartley v. Eagle Ins. Co., 222 N.Y. 178, 187, 118 N.E. 622, 625, 3 A.L.R. 1379 (1918). However, we believe that Judge Port was correct in remanding the matter to the referee for his initial determination, since "all the circumstances" in this case are not simple. There were a great many transactions between Dubnoff and the bankrupt.[3] Moreover, the affairs of this bankrupt are not uncomplicated; thus, the issue of usury in his business transactions has already been raised in other lawsuits. See McNellis v. First Federal Savings & Loan Ass'n, 364 F.2d 251 (2d Cir. 1966); McNellis v. Columbia University, N.Y.Sup.Ct., Onondaga County, March 24, 1964 (Simons, J.).[4] Judge Port aptly described the proceedings as presenting "the problem of searching for the needles of fact in a haystack of statements and colloquy of counsel." The referee obviously has a more complete view of what has transpired in this bankruptcy generally, and in the Dubnoff transactions particularly, than we can glean from the cold record. On the question of intent to evade the usury proscription, he already has before him besides Exhibit #55 the testimony both of the bankrupt's father and Dubnoff, and other relevant evidence. Under our mandate, he may receive additional testimony if the parties are not satisfied with the record as it now stands.
 
 
 5
 This necessary remand makes it unnecessary for us to decide certain questions raised by the parties, e. g., whether payments of principal or excessive interest by an insolvent debtor on usurious loans were made without fair consideration and hence were fraudulent under New York law or the Bankruptcy Act;[5] and whether section 70a(6) of the Bankruptcy Act passes title to a bankruptcy trustee of all payments the bankrupt could have recovered because of usury. However, there are a few additional arguments that should be disposed of now. Dubnoff argues that we should direct the referee on remand to find no usury unless additional testimony is offered, but we decline to so shackle the referee. Dubnoff objected to the admission into evidence of the bankrupt's books, but this ruling was clearly within the referee's discretion. Dubnoff also claims that Judge Port erroneously affirmed certain of the referee's findings, e. g., the finding of insolvency, the characterization of the Potter-Dubnoff transactions as loans,[6] the finding that Dubnoff attempted to have the bankrupt's permanent records altered. However, since these findings were not clearly erroneous, affirmance was proper, see In re Gurinsky, supra. Both Dubnoff and the trustee discuss the latter's confusing claim that $26,000 paid on notes to the Lincoln National Bank should be recovered from Dubnoff.[7] On remand, the referee should consider the claim and decide it. Judge Port's ruling that the referee used an improper method of calculating lawful interest on the monthly balances owing by Potter to Dubnoff is also attacked. We suggest that on remand Judge Port clarify why the method used by the referee was incorrect and suggest a proper method to be used.
 
 
 6
 The writer of this opinion, although not joined by his brothers on this point, feels that some additional observations are justified. There is a surprising lack of authority on whether payments of usurious loans by an insolvent constitute fraudulent conveyances under either the New York Debtor & Creditor Law or section 67d of the Bankruptcy Act. See Krause, The Treatment of Usury in Bankruptcy Proceedings, 29 N.Y.U.L. Rev. 1083 (1954). The trustee relies heavily on Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351 (1963), which deals with a Pennsylvania law, admittedly similar, however, to that of New York. But that case held no more than that interest in excess of principal and legal interest may be recovered by a trustee as a transfer made without fair consideration. The trustee in this case would have us go much further in holding that payments of principal in the year prior to bankruptcy are also voidable by the trustee, a conclusion apparently accepted by the referee but rejected by Judge Port. There are New York cases which hold that even though a borrower can recover property given as security for a usurious debt or restrain the foreclosure of such property without the tender of any interest or principal, the trustee in bankruptcy must first tender unpaid principal and legal interest before he may obtain equitable relief based on usury. Wheelock v. Lee, 64 N.Y. 242 (1876); New York Credit Men's Ass'n v. Manufacturers Discount Corp., 186 Misc. 756, 60 N.Y.S.2d 2 (Sup.Ct.1945), aff'd mem., 270 App.Div. 838, 61 N.Y.S.2d 375 (App. Div., 1st Dep't), motion for leave to appeal denied mem., 270 App.Div. 935, 62 N.Y.S.2d 843, motion for leave to appeal dismissed per curiam, 296 N.Y. 615, 68 N.E.2d 888 (1946), aff'd mem., 298 N.Y. 512, 80 N.E.2d 660 (1948). See also Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253, cert. denied, 287 U.S. 620, 53 S.Ct. 20, 77 L.Ed. 539 (1932); De Korwin v. First Nat'l Bank, 275 F.2d 755, 762 (7th Cir.), cert. denied, 364 U.S. 824, 81 S.Ct. 61, 5 L.Ed.2d 53 (1960). Although the decisions are not controlling and have been criticized,[8] they do suggest that the New York courts would consider an insolvent's payments of principal and legal interest even on a usurious loan to be made for fair consideration. Similarly unhelpful to the trustee is this court's decision, applying New York law, in Central Hanover Bank & Trust Co. v. United Traction Co., 95 F.2d 50 (2d Cir. 1938). There the question was whether a debtor's issuance while insolvent of a note in consideration of cancellation of other notes already outlawed by the statute of limitations was fraudulent under the New York Debtor & Creditor Law relied on here. This court stated (95 F.2d at 55):
 
 
 7
 The argument is that renewal of a barred debt is the incurring of an obligation without a fair consideration, and forbidden by the statute if the debtor is insolvent. To so construe the statute is to ignore all history. It has never been deemed a fraudulent conveyance to pay an honest debt or to perform an obligation which the obligor was under a moral duty to perform, although the debt or obligation was legally unenforceable because of some statutory provision.
 
 
 8
 Significantly, Judge Learned Hand concurred in the majority's interpretation of the New York statute in Central Hanover Bank only because he felt constrained to by the weight of existing precedent. Whether "fair consideration" under section 67d of the Bankruptcy Act, although defined in terms almost identical to the New York statute,[9] must likewise be construed to include payment by an insolvent debtor of principal and legal interest or excess interest on usurious loans is perhaps a more open question. Judge Hand's distinction between payment of an outlawed debt by an ordinary debtor and one who is insolvent is a significant one (95 F.2d at 57):
 
 
 9
 [T]here is no reason why a man should not revive a debt by promising to pay it after it is outlawed, because there is no reason why he should not make himself liable by a bare promise anyway. But the situation is wholly different when the debtor is insolvent, and when he should no longer meddle with his property except to protect his creditors. * * * [I]f he pays while he is insolvent, he dips his hand in his creditors' pockets in favor of one who, whatever his phantom "rights", has by his own conduct forfeited all power to share in the common pot.
 
 
 10
 See Glenn, Fraudulent Conveyances, § 214d at 372-373 (Rev. ed. 1940), criticizing the Central Hanover Bank case. In any event, these troublesome questions need not be decided now, since the issue of usury has yet to be determined, and, for the reasons already given, remand on that question is appropriate.
 
 
 11
 The decision of the district court is affirmed, and the matter is remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Now N.Y.Gen.Obligations Law § 5-513
 
 
 [2]
 See note 1 supra
 
 
 [3]
 Both parties seem to agree that there were forty-seven
 
 
 [4]
 Apparently, the issue is involved in sixty-five cases altogether. Record, p. 143
 
 
 [5]
 The trustee apparently seeks to recover the principal, but not the legal interest, paid by Potter on the Dubnoff loans in the year prior to bankruptcy
 
 
 [6]
 Dubnoff argues with some force that the referee improperly attributed to Dubnoff an admission that his testimony was incorrect that the transactions with Potter were "profit sharing" arrangements rather than loans. However, the characterization of the transactions as loans, which is the basic assumption of the referee's decision, was properly affirmed by the district court. Whether Dubnoff agreed to this characterization is, therefore, unimportant
 
 
 [7]
 Apparently this $26,000 is the difference between the claimed $69,950 of principal payments by Potter in the year prior to bankruptcy on allegedly usurious loans and the $43,950 allowed by the referee
 
 
 [8]
 TheNew York Credit Men's case has been described as thwarting the intent of Congress in the 1938 amendment to § 70a(6) of the Bankruptcy Act, 11 U.S.C. § 110(a) (6) "which specifically designated `rights of action arising upon . . . usury' as devolving on the trustee." See 4 Collier, Bankruptcy ¶ 70.28 [7], at 1262 & nn. 52, 53 (14th ed. 1964).
 
 
 [9]
 Both the New York and the bankruptcy provisions are versions of the Uniform Fraudulent Conveyance Act. See, respectively, 4 Collier, op. cit. supra note 8, ¶ 67.29 [1], at 320 & n. 6, ¶ 67.33, at 345; Historical Note in 12 McKinney's Consol.Laws of N.Y.Ann. (N.Y.Debt. & Cred.Law) p. 233 (1945)