**In re GURINSKY.**

No. 87591.

United States District Court
S. D. New York.

Nov. 19, 1951.

3. Guerlain, Inc. v. Woolworth Co., 297 N.Y. 11, 74 N.E.2d 217; Bristol-Myers Co. v. Picker, 302 N.Y. 61, 96 N.E.2d 177, 22 A.L.R.2d 1203.

Irving R. Markowitz, New York City, for petitioner, Lester Getz.

Weinstein & Levinson, New York City (Frank Weinstein, Samuel J. Levinson and Fred Newman, New York City, of counsel), for trustee.

IRVING R. KAUFMAN, District Judge.

I have before me a petition by Lester Getz for a review of an order of the Referee in Bankruptcy adjudging void a chattel mortgage and promissory notes. The order also declares that the net proceeds of the sale of the chattels covered by the mortgage are free of Getz's alleged lien and claim.

The facts are as follows: On March 20, 1951, the Trustee procured an order directing Lester Getz to show cause before the Referee why his claim to a balance of $3,200 and interest under a chattel mortgage executed by the bankrupt for $5,000 should not be declared usurious and void and the lien claimed by Getz against the proceeds of the sale of the trucks secured by the chattel mortgage be declared null and void.

The chattel mortgage was executed on December 16, 1949, by the bankrupt Gurinsky to secure a loan of $5,000. The petition of the Trustee alleged that the loan was entered into pursuant to a usurious agreement with the bankrupt. Under its terms the bankrupt was to pay Lester Getz

the sum of $45 weekly as interest on the loan over a period expiring January 10, 1952. The Trustee stated that Getz had at various times received the weekly rate of $45, a sum in excess of the 6% rate of interest permitted under the laws of the State of New York.

Getz appeared in the proceedings before the Referee by an attorney and denied in his answer that there was a usurious agreement to receive interest in excess of the legal rate. Testimony was taken before the Referee for several days and the stenographic record exceeds 300 pages.

The Referee declared the transaction usurious and expunged the claim of Lester Getz.

The first problem that presents itself is the reviewing authority of the district judge. The power of the district judge to review the orders of the Referee and the scope to be given the orders and findings of the Referee are set forth in General Order 47, 11 U.S.C.A. following section 53.[1]

Inherent in Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which is now applicable to bankruptcy, is a similar pronouncement with respect to the setting aside of findings of fact.[2]

Thus, the district judge starts with a clear mandate to accept the Referee's findings of fact unless clearly erroneous. The reason for this is obvious. The trier of the facts—in this case the Referee—has had the opportunity of weighing the evidence in conjunction with his personal reaction to the conduct of the witnesses who have appeared before him. His inferences drawn from the evidence require acceptance by the reviewing court in the absence of clear error. In re Madelaine, Inc., 2 Cir., 1947, 164 F.2d 419.[3]

1. "Unless otherwise directed in the order of reference the report of a referee or a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous * * *."

2. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

3. See also Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975, 976 and 977; Knetzer v. Larkin, 2 Cir., 1949, 178 F.2d 532; Panama Mail Steamship Co. v. Vargas, 1930, 281 U.S. 670, 671–672, 50 S.Ct. 448, 74 L.Ed. 1105; Research Products Co. Ltd. v. Treto-

 Judge Frank has set out rules guiding an appellate court's review of trial court findings. By analogy, these rules may be applied to the trial judge's review of a Referee's finding:

"We accept, as we must, those of the trial judge's inferences of fact which he drew directly from his estimates of the credibility of witnesses whom he observed as they testified in his presence—i. e., his inferences (sometimes called 'testimonial inferences') that certain facts existed because he believed some witness or witnesses who testified before him that those facts did exist."[4]

"Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. * * * But where the evidence supporting his finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances."[5]

It is apparent, therefore, that subject to the principles enunciated in the cases, the district judge will not substitute his own judgment for that of the Referee who heard the evidence where the Referee evaluated the testimony in the light of witness demeanor.

We approach, therefore, the major problem in this case. Did the Referee base his decision mainly upon his appraisal of witnesses? I believe he did. In the Memorandum attached to his findings the Referee stated that he found the testimony sharply contradictory.

"There is testimony by the bankrupt, that he made the payments described in finding No. 8 as excessive interest in pursuance of an agreement with the respondent to do so. The respondent denied that the checks were given for that purpose and declared that they were given in payment of one or several cash loans made by him to the bankrupt from time to time. The bankrupt unlike the respondent has no pecuniary interest in the outcome, but he, together with his daughter, displayed and voiced a strong bias and sharp animus against the respondent. Reliance must be placed, therefore, on uncontradicted facts and the most reasonable inferences that are warranted."

It appears that the Referee did not intend to convey thereby that he had given no weight whatsoever to the testimony of the bankrupt and his daughter. Instead, I interpret the Referee's words as meaning that if he were required to make a decision in this case based solely upon the oral testimony of the bankrupt and his daughter, he would have had great difficulty in concluding as he did, if, indeed, he would have come to the same conclusion at all. However, the Referee stated that he found corroborative evidence in the form of documents, and books, which bolstered their testimony and gave it probative substance.

 I agree with the Referee that the testimony is sharply contradictory. That is to be expected where usury is the charge. Getz stands to lose the unpaid balance of

lite Co., 9 Cir., 1939, 106 F.2d 530, 535; In re American Mail Line, Ltd., 9 Cir., 1940, 115 F.2d 196; Adams County v. Northern Pacific Ry. Co., 9 Cir., 1940, 115 F.2d 768–779; In re Rosenberg, 2 Cir., 1944, 145 F.2d 896, 898; Meyer v. Dolan, 2 Cir.1944, 145 F.2d 880, 881–882; Stubbs v. Fulton National Bank of Atlanta, 5 Cir.1945, 146 F.2d 558–560.

4. American Tobacco Co. v. The SS. Katingo Hadjipatera, 2 Cir., 1951, 194 F.2d 449, 451.

5. Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537, 539. See also U. S. v. United States Gypsum Co., 1948, 333 U.S. 364, 394–396, 68 S.Ct. 525, 92 L.Ed. 746; Drew & Co. v. Reinhard, 2 Cir., 1948, 170 F.2d 679–684; Daitz Flying Corp. v. United States, 2 Cir., 1948, 167 F.2d 369, 371; Broadcast Music, Inc., v. Havana Madrid Restaurant Corp., 2 Cir., 1949, 175 F.2d 77, 80.

his loan, in this case $3,200. It is clear, too, that the bankrupt and his daughter bore animus towards Getz and this might have been a motive to falsify. But the bankrupt could not expect financial gain however the issue was resolved. The Referee found, on the critical questions whether an agreement to pay usurious rates of interest had been entered into and whether such payments actually had been made, that the version of the bankrupt as corroborated by the documentary evidence was the true one. The experienced Referee reached a conclusion that was not only reasonable but proper.[6]

6. *Findings of Fact and Conclusions of Law.*

The issues raised by the petition of the Trustee in bankruptcy for an order adjudging a chattel mortgage void for usury and the answer of the respondent, Lester Getz, having been duly heard, I find and decide as follows:

1. On December 29, 1950, an involuntary bankruptcy petition was filed against Gurinsky who conducted a fuel oil and coal business and he was adjudicated January 12, 1951.

2. In March, 1949 the respondent loaned the bankrupt $1,000, which was entered in the bankrupt's cash receipt book under date of March 21, 1949, as an "exchange" and on April 21, 1949 the bankrupt gave the respondent a check for $1,000 which was entered in his disbursement book under "loan and exchange" and another for $50 entered in the book as "commission", but the check for $1,000 never cleared the bank and was voided in November, 1949 when the respondent's indebtedness for fuel oil delivered to him by the bankrupt was credited against that amount and the bankrupt's check for $28.31 representing a credit balance was given to the respondent.

3. The respondent loaned to the bankrupt the sum of $500 on November 16, 1949 and $1,000 on December 12, 1949, and it was then agreed between them that the bankrupt would pay interest to the respondent at the rate of $50 per month upon each one thousand dollars loaned.

4. On December 16, 1949 the respondent loaned to the bankrupt the sum of $3,500 and at and prior to such loan it was agreed between them that the bankrupt would pay interest at the rate of $45 per week on his indebtedness to the respondent.

5. The bankrupt on the same day executed and delivered to the respondent a chattel mortgage covering 3 motor vehicles to secure the payment of $5,000 and interest at 6% per annum together with 25 promissory notes each in the sum of $200 bearing interest at 6% per annum payable on the 10th day of each month commencing January 10, 1950 and ending January 10, 1952.

6. The bankrupt paid the principal sum of nine notes but did not pay any of the interest provided thereby and the respondent surrendered and delivered each of such notes to the bankrupt upon payment of the principal sum without any writing of the bankrupt relating to interest.

7. On December 16, 1949 when the chattel mortgage was delivered the bankrupt owed no more than $5,000 to the respondent.

8. Pursuant to the said agreements that the bankrupt pay interest at a rate exceeding 6% per annum the bankrupt commencing December 19, 1949 paid interest upon the $5,000 to the respondent at rates exceeding 6% per annum, by checks in the amounts shown in Column A, bearing dates shown in Column B, deposited by respondent on the dates shown in Column C, and paid by the drawee bank on the dates shown in Column D, all as follows:

| A | B | C | D |
| --- | --- | --- | --- |
| $210 | December 19, 1949 | December 19, 1949 | December 20, 1949 |
| $ 45 | January 10, 1950 | January 12, 1950 | January 13, 1950 |
| $ 90 | January 23, 1950 | January 23, 1950 | January 24, 1950 |
| $120 | February 6, 1950 | February 10, 1950 | February 14, 1950 |
| $ 90 | February 21, 1950 | March 27, 1950 | March 28, 1950 |
| $ 90 | March 16, 1950 | March 20, 1950 | March 21, 1950 |

9. The majority of those payments were entered in the bankrupt's cash disbursement book as interest paid to the respondent and were included in a monthly summary entered in the general ledger as interest.

10. The Receiver came into possession of the mortgaged chattels and sold them pursuant to the order of this court.

I agree that the decision would have been simpler if the witnesses produced by the Trustee were completely without animus or if the records on their face had disclosed the usurious nature of the transaction, but the very nature of the transaction calls for surreptitious action. Usury is aways difficult to discover.

We come now to the respondent's contention that the Referee failed to apply the proper rules of evidence with respect to the quantum of proof necessary in order to establish a usurious agreement. The proper rule is far from clear-cut. Collier in his work on bankruptcy states that usury must be decided in accordance with the state law and must be proved by a preponderance of the evidence. (Vol. 3, p. 1807). The respondent would apply a more stringent test. I have examined the cases he cited. They indicate, at most, an inconsistent, even casual attitude, on the part of the courts in characterizing the quantum of proof required to show usury.[7] I think, in sum, they show that usury must be proved with reasonable certainty by a clear preponderance of the evidence. Unsure as these characterizations always are, I think it might be fairly said that this represents a measure of proof, perhaps more than a fair preponderance of the evidence, yet less than "beyond a reasonable doubt". That does not mean that the Referee could not determine whether there was a clear preponderance of the evidence by drawing fair inferences from the proof submitted, both oral and documentary. Can it not be said that it is a fair inference based upon oral testimony and corroborative documents that the check for $45 on January 10, 1950, the due date of the first note, was a payment of interest, that the checks for $90 on January 23, 1950, February 21, 1950 and March 16, 1950 each represented two weekly payments of interest?

Conclusions.

1. This court has jurisdiction of the subject matter.

2. The promissory notes and chattel mortgage executed and delivered by the bankrupt to the respondent on December 16, 1949 were delivered and accepted in

The inferences were particularly proper, I think, in view of respondent's testimony. He claimed that no interest payments were *ever* made on the monthly notes, though he conceded that .6% interest had been agreed upon; nor apparently was he concerned over the bankrupt's delinquency. Is it likely that respondent, a hard-headed business man, would be willing to wait indefinitely, as he testified, to receive interest payments? I hardly think so. The Referee's conclusion, based upon all of the evidence, that other payments to respondent actually represented interest seems eminently reasonable.

White v. Benjamin, 1893, 138 N.Y. 623, 33 N.E. 1037 so strongly relied upon by the respondent, is good law. It stands for the proposition that he who alleges usury as a defense to payment must establish it by clear and satisfactory evidence. This does not mean that it must be evidence which was not contradicted, for it is rare to find a case where this exists. It does mean that after all of the evidence is in, considering the contradictions, he who makes a determination that usury existed, must base his conclusion upon satisfactory evidence in the record. The court stated in the White case, 138 N.Y. at page 624, 33 N.E. at page 1038:

"He enters upon the defense with the presumption against the violation of the law, and in favor of the innocence of the party charged with the usury. He cannot properly claim to have the usury inferred where the evidence is inconclusive, and just as consistent with the absence as with the presence of usury. It is a just requirement that all the facts constituting the usury should be proved with reasonable certainty, and that they shall not be established by mere surmise and conjecture, or by inferences entirely uncertain."

pursuance of a usurious agreement and are void.

7. In re Samuel Wilde's Sons, D.C.S.D.N.Y. 1904, 133 F. 562; Morris Plan Industrial Bank v. Faulds, 1945, 269 App.Div. 238, 55 N.Y.S.2d 372; White v. Benjamin, 1893, 138 N.Y. 623, 33 N.E. 1037.

The Referee, I think, was mindful of these principles. While I do not agree with his interpretation that the cases require only "a fair preponderance of the evidence" in favor of the Trustee, I do believe that the record nevertheless discloses that the Trustee has sustained his burden in accordance with my interpretation of the law.

In concluding, as I do, I am mindful that the Referee rejected the bankrupt's position that the word "interest" had appeared on each of the checks at the time that they had been delivered by him to the respondent. However, the fact that the Referee did so conclude does not compel the holding that he should have rejected, as a matter of law, the balance of the testimony and documentary evidence offered by the Trustee. This evidence the Referee found credible. He recognized unquestionably that the ultimate determination based on all the evidence must perforce take into account whatever in the record fairly detracts from the weight of the evidence. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See also N. L. R. B. v. Montgomery Ward & Co., 2 Cir., 1951, 192 F.2d 160. The substantial proof of the Trustee's position could not be completely defeated by a holding against him on this "interest" issue. It was an element detracting from the substantiality of evidence, which the Referee properly took into consideration.

Upon the entire record, the Referee was justified in finding that the facts and circumstances surrounding these transactions were incompatible with any reasonable hypothesis other than that of a usurious agreement. I do not believe, as urged, that the decision of the Referee was based upon "mere surmise and conjecture, or * * inferences entirely uncertain." White v. Benjamin, supra. The Referee's findings were borne out by the evidence. They are not clearly erroneous. There is no basis upon which this Court should override his decision.

The respondent asserts additionally that the Trustee's petition seeking to void the chattel mortgage and the notes was too vague and indefinite. The matter may be disposed of quickly. Under the Federal Rules of Civil Procedure, pleadings in the Federal Courts serve the purpose of mere notice-giving. Rule 8(c) deals with affirmative defenses. It is important to note that there is no requirement that usury even be pleaded as an affirmative defense. Apart from this, Rule 8(e) provides that each averment in a pleading shall be simple, concise and direct. I believe the Trustee has met the requirements.

The respondent also contends that the Referee erred in permitting the introduction of certain book entries. The objection is without merit. The respondent was the first to introduce into evidence entries from the bankrupt's books. (S.M. pp. 25–27). He introduced first page 8 of the bankrupt's cash disbursement book (S. M. pp. 26–27) and later page 3 (S.M. p. 31). Up to that time the Trustee had made no attempt whatsoever to introduce any of the bankrupt's books. The introduction by respondent took place on cross-examination of the bankrupt. Certainly the Trustee could offer in evidence other entries in the same books to qualify or explain away the inferences which the respondent sought to create. Furthermore, the entries in the books of the bankrupt were made prior to the altercation between Getz and Gurinsky and at a time when they were on friendly terms. The important consideration in introducing this type of entry is the presence or absence of motive to falsify. The respondent was apparently willing to accept the accuracy of certain pages of the book by offering these pages himself. He implied no motive to falsify there. It is only fair to attribute an equally honorable motive to other entries in the book. See Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 1951, 187 F.2d 122, certiorari denied 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 re-Federal shopbook rule.

The petition for review is dismissed and the Referee's findings and order based thereon are confirmed.

Settle order.