Howaed Bebleb, J.
This is an action to recover the penalty provided in subdivision 6 of section 108 of the Banking Law for the alleged ‘ ‘ knowingly taking, receiving, reserving or charging a greater rate of interest than that authorized by this section as computed by this section ”.
This litigation has developed into an acrimonious dispute generated, to a great extent, by the cavalier conduct of counsel for the defendant. His prosaic writing style, liberally sprinkled with invective and epithets directed at the plaintiff such as “deadbeat”, “ scoundrel ”, “knave”, and his use of ill-devised metaphor serves no useful purpose in a court of law, but, on the contrary, is counterproductive to the proper administration of justice. The court finds the literary style of the attorney for the defendant repugnant and unprofessional and however inclined this court is to cause same to operate against his client, it is aware that such would frustrate the interests of justice. The court takes notice also of the fact that plaintiff appears to be afflicted with a proclivity towards drawing checks against insufficient funds. Defendant claims it was conduct of this sort that tripped up the computer.
There is no dispute that late charges assessed by defendant bank against the plaintiff borrower exceeded the limit declared in section 108 (subd. 5, par. [e], cl. [ii]) of the Banking Law. The plaintiff concedes that overcharges were credited to his account on December 10, 1971, several months after the day, July 27, 1971, when the sum of successive late charges first exceeded the $15 statutorily allowable annual maximum. Defendant argues that the refund was made shortly after the bank was first made aware of the existence of an overcharge and within 60 days after receiving notice given by the plaintiff.
*1006 Defendant bank had on various occasions assessed late charges against the plaintiff’s account, the sum of which surpassed the statutorily permissible annual maximum on July 27, 1971. The parties stipulated four days later, on July 31, 1971, to a plan for extinguishing plaintiff’s outstanding obligation to the bank by the payment of monthly installments of $25 each commencing on November 1, 1971 and continuing until the entire balance was paid. However, the amounts overcharged were not credited to plaintiff’s account until December 10, 1971 after plaintiff brought notice of the excessive late charges to defendant’s attention but the litigants cannot agree on the date the notice was received. Plaintiff contends he first called the manager of the installment loan department on August 6, 1971 and spoke to him again on August 18, 1971. The manager, however, recalls only a conversation had with plaintiff shortly before Thanksgiving Day in 1971. The credit therefore was made either within 60 days according to the manager’s recollection or after 60 days by plaintiff’s version. The action was commenced by plaintiff on September 7, 1972.
The bank has employed a multi-pronged defense, (1) denying initially that it had committed usury, and (2) that even if fines are included as interest and as such exceeded statutory máximums, rights accruing to the parties under the old contract were extinguished by the stipulation between the parties which amounted to an accord and satisfaction, (3) action is barred by the Statute of Limitations as to any rights which accrued prior to September 7,1971, (4) that there was no usurious intent, and (5) the adjustment to plaintiff’s account was properly made within the 60-day period provided by section 108 (subd. 5, par. [e]).
The agreement between the parties provides for open end credit. The nature of the arrangement is described in section 108 (subd. 5, par. [a]), i. e. “A bank or trust company which operates a personal loan department pursuant to paragraph (a) of subdivision four hereof may establish credits under written agreements with borrowers, pursuant to which one or more loans or advances to or for the account of a borrower may be made from time to time, by means of honoring one or more checks or other written orders or requests of the borrower and may charge interest on such loans and advances at the rate permitted by paragraph (b) ” (emphasis supplied).
Paragraph (e) of subdivision 5 defines respectively what may properly be charged as interest and additional charges. “(e) The maximum rate of interest authorized by this subdi *1007 vision shall be inclusive of all charges to the borrower incident to investigating and making any such loan or advance.”
Fees in addition to interest as limited, supra, may also be charged in accordance with specific provision therefor in the sentence that follows: “ No fee, commission, expense, or other charge to the borrower whatsoever in addition thereto shall be taken, received, reserved, or contracted for, except, if it is so provided in the agreement ” the statute then pronounces four instances where additional charges will be permitted.
(i) a service charge upon each check, etc.
(ii) in case of default in payment of any installment, in addition to interest, a fine.
(iii) recovery of expenditures for necessary court process.
(iv) a charge for premiums in case the bank or trust company insures a borrower.
Clause (ii), applicable to fines for default in payment of installments .sets the maximum that may be collected by the bank at $15 during any calendar year and further provides that at any time the aggregate fines exceed $15, the bank or trust company shall within 60 days apply the excess fine collected to repayment of principal.
Thus analyzed it would appear the adjustment, to be properly made, would have to be done within 60 days from the time aggregate fines exceeded $15, rather than from the time of any demand or noticé. If the penalty provision of subdivision 6 (Banking Law, § 108, subd. 6) applies to excessive fines in instances of default, an aggrieved person would be entitled to maintain an action to recover the penalty only after 60 days had passed since aggregate charges first became excessive.
This, incidentally, also disposes of the issue of timely prosecution. The action is governed by the one-year statute in subdivision 6 of CPLR 215. If plaintiff is entitled to recover a penalty, the right did not accrue until after the lapse of 60 days following the overcharge. The period of limitations would therefore be calculated to commence at that time and to run for a period of one year thereafter.
However, the court must now determine whether or not the instant violation falls within the scope of subdivision 6, and, if so, whether or not there existed the unlawful or corrupt intent to violate the usury statutes. (Halsey v. Winant, 258 N. Y. 512.)
Subdivision 6 of section 108 provides a penalty for the knowing, taking, receiving or charging a greater rate of interest. No part of the subdivision refers to any of the permissible charges “ in addition to interest ” referred to above (see Bank *1008 ing Law, § 108, subd. 5, par. [e], cl. [ii]) as being included in the meaning of ‘ ‘ interest ’ ’.
The paragraph permits, “ if it is so provided in the agreement * * * in case of default, in addition to interest, a fine in an amount not to exceed four cents per dollar ’ ’. This part of the paragraph is interpreted to mean that a lender may charge interest upon the delinquent principal payment and a fine. (5 N. Y. Jur., Banks & Trust Cos., § 468, p. 515.)
Abundant authority exists in New York for the holding that there is no usury where an excéssive rate of interest is made payable after maturity (Bloom v. Trepmal Constr. Corp., 29 A D 2d 951, affd. 23 N Y 2d 730; Flynn v. Dick, 13 A D 2d 756; H. D. S. Trading Co. v. Redisch, 19 Misc 2d 716; Florida Land Holding Corp. v. Burke, 135 Misc. 341, affd. 229 App. Div. 853). A rationale common to all these decisions rests upon a good faith provision in the agreement devoid of intent to evade the usury laws. In H. D. S. Trading Co. v. Redisch (supra) the court added that such a provision is on par with provisions calling for attorney’s fees if the creditor must resort to litigation to collect. While permitting the afore-mentioned charges might lead in some cases to abuses and excessive demands by creditor banks, still, absent the intent to evade the usury laws, the transaction will not be deemed usurious. The debtor always has it in his power to avoid additional charges by fulfilling his obligation promptly (Florida Land Holding Corp. v. Burke, supra).
This court finds no intent on the part of the defendant to charge an excessive rate of interest and/or late charges and gives credence to defendant’s contention that the excessive charge resulted from computer error caused by credits and debits to plaintiff’s account due to an excessive number of overdrafts issued by the plaintiff.
The instant section provides a penalty for taking interest at a rate greater than authorized as computed by the section. The several permissible additional charges enumerated in paragraph (e) of subdivision 5 are not included as interest as computed in paragraph (b) of subdivision 5 or the first sentence in paragraph (e) of subdivision 5 or elsewhere.
Plaintiff contends in his memorandum of law that the legislative intent behind the statute was to add late charges under the heading of interest. Such a construction is not warranted. Were this so, then one would be compelled to ascribe to the Legislature an intention to grant a mechanism for imposing small and reasonable penalties upon delinquent borrowers, while *1009 at the same time imposing substantial penalties upon the lenders for utilizing the statutorily authorized device. For example — if parties agreed that interest on a loan (which statute expressly states includes charges incidental to investigating and making the loan) shall be equal to the maximum lawful rate, would not the assessment of any duly authorized late charge increase total charges to a level in excess of maximum rates? Surely, the only plausible construction would be to consider fines or late charges as being authorized, but separately and apart from interest.
The sole remaining issue in the case relating to the effect of the stipulation between the parties as an accord and satisfaction is of no moment in the light of the findings of the court, and is left unresolved. In view of the foregoing, the court finds no violation of subdivision 6 and plaintiff is not entitled to recover the penalties provided therein.
Accordingly, judgment is awarded to the defendant against the plaintiff.