63 N.Y.2d 254 (1984)
Daniel E. Freitas et al., Appellants,
v.
Geddes Savings and Loan Association, Respondent.
Court of Appeals of the State of New York.
Argued September 6, 1984.
Decided October 25, 1984.
Michael W. Harris for appellants.
Daniel F. Mathews, Jr., for respondent.
Chief Judge COOKE and Judge MEYER concur with Judge JASEN; Judge KAYE concurs in result only; Judge SIMONS dissents and votes to reverse in a separate opinion in which Judge JONES concurs; Judge WACHTLER taking no part.
*256 JASEN, J.
On this appeal, we are asked to decide whether a bank lender is civilly liable for usury, in the absence of usurious intent, solely on the basis of the failure to properly itemize an otherwise authorized bank charge.
On May 9, 1978, plaintiffs Daniel and Beverly Freitas submitted a formal mortgage application to defendant, Geddes Savings and Loan Association of Syracuse, New York, in order to finance the purchase of a modular home. The home was to be placed upon a lot in the Town of Camillus, which was a gift of the parents of Beverly Freitas to the couple. The mortgage application was for a conventional mortgage, with a term of 25 years, at an annual interest rate of 8.5%. Plaintiffs signed the mortgage application and paid a $50 appraisal fee and a $20 credit report fee.
On or about May 23, 1978, defendant mailed a letter of commitment to plaintiffs approving the mortgage application. The loan amount approved by defendant was $29,000 at an 8.5% annual interest rate, the maximum legal rate, at the time, for a duration of 25 years. Together with the letter of commitment was a request by defendant for a "[o]ne percent Commitment Fee of two hundred ninety dollars to be submitted with the acceptance of this commitment letter!" Plaintiffs forwarded a $290 check, and signed disclosure forms, to defendant on May 30, 1978. The loan was closed on August 24, 1978, at which time all parties were represented by independent counsel, and the funds were disbursed as directed by plaintiffs.
*257 Subsequent to the closing, plaintiffs were advised that the $290 bank charge paid to defendant rendered the loan usurious, and plaintiffs commenced this action pursuant to section 380-e of the Banking Law seeking cancellation of the interest due upon the loan for the remaining 24 years of the mortgage and recovery of twice the interest paid. Plaintiffs argue that the bank charge was not itemized in accordance with General Regulations of the Banking Board so as to properly exclude the fee from the interest computation and, accordingly, the $290 fee renders the transaction usurious when added to the 8.5% annual rate of interest. Defendant explains that the fee, although incorrectly denominated as a "Commitment Fee", was for additional services as authorized by the General Regulations of the Banking Board (3 NYCRR 4.3 [b] [7]) and that it did not knowingly charge a usurious rate of interest in violation of section 380-e of the Banking Law.
Plaintiffs' motion for summary judgment at Special Term was denied. In denying summary judgment, the court held that a factual issue was raised as to the purpose of the $290 bank charge. After a nonjury trial, the court made two findings: that the $290 bank charge was not a subterfuge to collect illegal interest, and that the bank lacked usurious intent. However, the court went on to hold that the bank was not entitled to collect the $290 bank charge since it was not itemized in writing to the borrowers in accordance with banking regulations.[1] Judgment for plaintiffs was rendered in the amount of $290, and an appeal was taken by plaintiffs. The Appellate Division, Fourth Department, affirmed the judgment of Supreme Court unanimously, without opinion. Leave to appeal was granted by this court.
A brief review of the legislative history of section 380-e of the Banking Law and the regulatory scheme established by authority of section 14-a of the Banking Law is necessary to determine the proper scope and operation of Banking Board regulations 4.2 and 4.3 (3 NYCRR 4.2, 4.3).
The proscription against usury, which has from time immemorial protected borrowers from the exaction of illegal *258 interest (Schneider v Phelps, 41 N.Y.2d 238, 243), is deeply rooted in the jurisprudence of New York. In 1787, this State enacted a usury statute which barred the taking of interest in excess of 7% by means of any corrupt bargain. (L 1787, ch 13.) In subsequent years, a generalized usury statute was enacted (L 1879, ch 538 [formerly General Business Law, § 370 et seq., from which General Obligations Law, § 5-501 et seq. is derived]) as were a number of specialized usury statutes to address the lending transactions of certain banking organizations, including banks and trust companies (Banking Law, § 108, subd 6); private bankers (Banking Law, § 173, subd 1); credit unions (Banking Law, § 453, subd 5, par [b]) and investment companies (Banking Law, § 510-a, subd 1). It was not until the enactment of chapter 963 of the Laws of 1960 (Banking Law, § 380-e) that the effect of usury by a savings and loan association was expressly defined. (See 1960 Report of NY Law Rev Comm, p 84.)
Section 380-e of the Banking Law,[2] interposed by plaintiffs in an attempt to impeach the instant mortgage loan transaction, was enacted "to make certain that the consequences of taking excessive interest * * * by savings and loan associations are those provided by the Banking Law for banks and trust companies, private bankers, industrial banks, credit unions and investment companies, rather than those provided by the General Business Law" (official note, 1960 Session Laws of NY, L 1960, ch 963, pp 1542-1543). Pursuant to subdivision 1 of section 5-501 of the General Obligations Law, the Banking Board is empowered to prescribe the rate of interest in accordance with section 14-a of the Banking Law.
Section 14-a of the Banking Law authorizes the Banking Board to establish the maximum rate of interest to be employed in certain lending arrangements, including conventional home mortgage loans. The section further provides *259 that such rate "shall include as interest any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for the making of a loan or forbearance" (Banking Law, § 14-a, subd 2 [then § 14-a, subd 2, par (b)]) and that the Banking Board may adopt regulations to effectuate this policy (Banking Law, § 14-a, subd 3 [then § 14-a, subd 2, par (a), cl 2]). The purpose of section 14-a (subd 2, par [b]) of the Banking Law is to "curb the use of points and other charges which increase the lender's return" and to empower the Board "to prescribe by regulation the specific fees and charges to be included as interest on loans subject to the ceilings prescribed by the Board." (Memorandum of New York State Banking Dept, Bill Jacket, L 1968, ch 349, p 4.) The text and legislative history of section 14-a of the Banking Law are silent as to the mode of disclosure, if any, to be undertaken by the lender in a mortgage loan transaction.
At the time of the home mortgage loan by the Geddes Savings and Loan Association to the plaintiffs, the maximum rate of interest for such loan was 8.5%. (3 NYCRR 4.1; L 1973, ch 1055.) Interest has been defined by Banking Board regulation (3 NYCRR 4.2), which provides in pertinent part:
"4.2 * * *
"The term interest as used in section 4.1 of this Part:
"(a) when applied to any loan or forbearance secured primarily by an interest in real property improved by a one- or two-family residence occupied by the owner, shall include origination fees, points and other discounts and all other amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance. The fees, charges and costs described in section 4.3 of this Part do not constitute amounts paid or payable, directly or indirectly, to or for the account of the lender in consideration for making the loan or forbearance and are not included in `interest';

"(b) when applied to any other loan or forbearance, shall mean all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would *260 be includible as interest under New York law as it existed prior to the enactment of chapter 349 of the Laws of 1968;
"(c) when applied to any loan or forbearance insured by the New York City Rehabilitation Mortgage Insurance Corporation, shall not include premiums paid for insurance pursuant to section 708 of the Private Housing Finance Law." (Emphasis added.)
Exclusions from interest in certain home mortgage loans have been set forth by Banking Board regulation (3 NYCRR 4.3), which provides in pertinent part:
"4.3 * * *
"The term interest for purposes of subdivision (a) of section 4.2 of this Part shall not include the following amounts payable in connection with the loan or forbearance, if itemized in writing to the borrower:

"(a) a reasonable fee in consideration for the legally enforceable written commitment of the lender to reserve funds for future disbursement to the borrower, provided such commitment was made prior to November 1, 1968;
"(b) reasonable fees, charges and costs for the following services actually and necessarily rendered:
"(1) appraisal of property securing the loan or forbearance;
"(2) preparation of surveys, abstracts or similar documents;
"(3) title examinations, examinations of public records or similar procedures;
"(4) title insurance;
"(5) legal services and reasonable disbursements related thereto;
"(6) notarizations, authentications or similar procedures; and
"(7) periodic inspections related to advances to be made under the loan agreement". (Emphasis added.)
The imposition of civil liability for usury is closely circumscribed by the rules of construction traditionally applied to usury statutes, and the substantial burden of proof to be borne by the borrower which is only satisfied by clear *261 and convincing evidence of each element of usury, including usurious intent.
Usury penalties imposed for the violation of the statute are to be strictly construed and should not be held to include any violation which is not clearly within the plain intention of the statute. (Di Nome v Personal Fin. Co., 291 N.Y. 250, 253.) This view is in accord with the long line of authority establishing that usury must be proved by clear evidence as to all its elements and will not be presumed (see, e.g., Giventer v Arnow, 37 N.Y.2d 305, 309), and recognizes that forfeiture imposed by usury statutes is penal in nature (McKinney's Cons Laws of NY, Book 1, Statutes, § 273). In this regard, it has been noted that in cases of civil usury "[t]he [New York] courts, however, anxious to avoid the harsh penalty of forfeiture, have placed the burden of proving the transaction usurious on the borrower, declaring that the defense of usury must be `decisively proved * * * and not * * * left to inference or implication.' (Brown v. Robinson, 224 N.Y. 301, 318)". (Syndicate Loan-Shark Activities and New York's Usury Statute, 66 Col L Rev 167, 170, n 22.) Clear and convincing evidence, of an act unequivocally exacting a rate of interest in excess of that allowed by law, places a transaction within the plain intent of the usury statute.
Di Nome v Personal Fin. Co. (291 N.Y. 250, supra) is illustrative of the view that the harsh penalty of forfeiture is wholly inappropriate where, as here, a technical violation of a statutory lending disclosure requirement occurs. Pursuant to the "Small Loans Act" (Banking Law, § 353), a lender was required to "[d]eliver to the borrower at the time any loan is made a statement * * * in the English language showing in clear and distinct terms the amount and date of the loan and of its maturity". Defendant failed to disclose the date of maturity of the loan, as required by statute. Plaintiff contended that this omission was an illegal departure from the statutory command that the statement of the loan should clearly and distinctly show the date of maturity, and in view of the technical error, the note and chattel mortgage given to defendant to secure a loan should be declared void. In response to plaintiff's contention, this court noted that violation of the act deprived *262 the lender of all right to collect or receive any principal, interest or charges, and exposed the lender to the possibility of a misdemeanor charge. The court rejected plaintiff's claim, and held that to impose penalties for failing to set forth the date of maturity would do violence to the principles that a provision imposing forfeiture should be strictly construed and that when conduct is to be visited with loss or impairment of liberty or property, clear and exact definition of the offense is necessary.
Usurious intent, an essential element of usury, which is embodied in the statutory requirement that an unlawful rate of interest be knowingly taken (Banking Law, § 380-e), is a question of fact. (Hammelburger v Foursome Inn Corp., 54 N.Y.2d 580, 594.) It is the prevailing view that where usury does not appear on the face of the note, usury is a question of fact. (Mutual Protective Corp. v Palatnick, 118 Conn 1, 4; Chicago Tit. & Trust Co. v Jensen, 271 Ill App 419, 422; Janisse v Winston Inv. Co., 154 Cal App 2d 580; see, also, Matter of Gurinsky, 105 F Supp 42; Note, California's Model Approach to Usury, 18 Stan L Rev 1381, 1390.) It has been properly observed: "[I]f the note or bond shows a rate of interest higher than the statutory lawful rate, it would be immaterial whether the lender actually intended to violate the law. His intent would be conclusively presumed. On the other hand, if the parties have made an honest mistake of fact, like a reasonable error in computation (91 C.J.S. Usury Sec. 14c, note 61), * * * there would be no usury because no unlawful intent." (Hershman, Usury and the Tight Mortgage Market, 85 Banking LJ 189, 195.)
While it is settled that the voluntary taking or reservation of a greater interest or compensation for the loan or forbearance of money than that allowed by law is usurious, a bona fide mistake of fact vitiates usurious intent. (Fiedler v Darrin, 50 N.Y. 437, 443; New York Firemen Ins. Co. v Ely & Parsons, 2 Cow 678, 705-707; 6A Corbin, Contracts, § 1504, p 696.) An imprecise lending disclosure (Di Nome v Personal Fin. Co., 291 N.Y. 250, supra) or a computer error (Heelan v Security Nat. Bank, 73 Misc 2d 1004) constitutes *263 a bona fide error of fact which is insufficient to establish the requisite usurious intent.[3]
Applying these principles to the facts of this case, we must consider whether the trial court erred in viewing the import of the $290 "Commitment Fee" charge as a question of fact and in determining that the one-time charge, while erroneously described, was not a subterfuge to collect additional and illegal interest over and above the 8.5% annual interest rate allowed by law. In disallowing the claim that the fee charged by the bank constituted interest within the meaning of the bank regulations, the court found that the charge was intended as an authorized fee for processing and servicing a building loan as specifically authorized by regulation 4.3 (b) (7) (3 NYCRR), and was not unreasonable in amount in terms of the actual services rendered by the bank.[4]
We hold that the courts below properly considered the import of the fee charged as one of fact. While sections 4.2 and 4.3 of the banking regulations define which fees and charges imposed by the bank in connection with a loan should or should not be included as interest within the meaning of the regulations, it does not necessarily follow that a failure properly to characterize a charge made should, as a matter of law, be included as interest within the meaning of the regulations. We reject plaintiffs' contention that any denominated bank charge which does not literally fall within the exclusion from interest provision of section 4.3 of the banking regulations must be considered "interest" as a matter of law and that the intent of the parties entering into the transaction is irrelevant.
To accept this interpretation of the bank regulations and the statute would impose a strict liability upon the bank, a *264 much more stringent test for usury than would be authorized by the statute under which the regulations were promulgated. It is axiomatic that an administrative agency may not by its rules expand the grant of authority from the Legislature, but must function within its mandate. (Matter of Jones v Berman, 37 N.Y.2d 42, 53.) To sanction plaintiffs' interpretation would be to impose a condition of strict compliance upon exclusions from interest irrespective of mistake or misdescription, which has neither been authorized nor contemplated by sections 14-a or 380-e of the Banking Law.
Section 380-e of the Banking Law prohibits the knowingly taking of interest in excess of that allowed by law. Where the rate of interest on the face of the note, as here, is not in excess of the legal rate at the time of the loan, it must be shown that the separate one-time bank charge denominated as "Commitment Fee" was knowingly received by the bank as a ruse to collect additional interest in excess of that allowed by law. While it is not necessary to the offense of usury that there should be an actual intention to violate the statute, there can be no usury without a showing of a general intent to take interest at a greater rate than that allowed by law. (Cf. Fiedler v Darrin, 50 N.Y. 437, 443, supra.)
The dissent's reliance upon People v Shapiro (4 N.Y.2d 597) and People v Ahrend Co. (308 N.Y. 112), each of which involved a criminal prosecution, to establish the intent requirement of civil usury is, at best, misplaced. This is especially true since the standard enunciated by Shapiro and Ahrend Co. was expressly derived from section 3 of the Penal Law, which has been superseded by subdivision 2 of section 15.05 of the Penal Law. Myers v U. S. Camera Pub. Corp. (9 Misc 2d 765) is similarly inapposite since the "knowledge" test set forth in that case was based exclusively upon general criminal law authority (to wit: Ballentine Law Dictionary, p 721; 8 RCL, Criminal Law, § 12, p 73). The "knowledge" test articulated by the dissent, derived from the criminal law, is akin to the standard utilized by New York's criminal usury statutes. (Penal Law, §§ 190.40, 190.42.) This standard was expressly held to be irrelevant to loans by banks. (Flushing Nat. Bank v Pinetop Bldg. Corp., 54 AD2d 555, affd 42 N.Y.2d 1038.) *265 The standard applicable to the extortionate and socially repugnant offense of loansharking is emphatically inappropriate to civil usury resulting from a mere failure to properly itemize.
Moreover, in each of the cases cited by the dissent in support of this singular view of the intent requirement (Giventer v Arnow, 37 N.Y.2d 305, to Matter of Dane, 55 AD2d 224), usury was established on the face of the loan instrument, and resort to extrinsic evidence was not necessary. Thus, these cases are perfectly concordant with our view that where usury cannot be discerned from the four corners of the mortgage instrument, and there exists a bona fide dispute as to the import of a fee extraneous to the note, the existence of usury is a question of fact.
Here, it cannot be said, as a matter of law, that the bank loan, on its face, establishes clear evidence of usury. Whether or not there was a general intent in collecting the $290 bank charge which was denominated as a "Commitment Fee" to take and receive a rate of interest in excess of the legal percentage allowable at the time of the loan, is a question of fact. (Hammelburger v Foursome Inn Corp., 54 N.Y.2d 580, 594, supra.) The trial court, treating this as a question of fact, found, after a trial, that the "Commitment Fee" was in fact intended to be a charge for an authorized item allowed under section 4.3 of the regulations, to wit: "periodic inspections related to advances to be made under the loan agreement". (3 NYCRR 4.3 [b] [7].) In light of the Appellate Division's affirmance, there is an affirmed finding of fact that the plaintiffs failed to establish by clear and convincing proof that the bank, in charging the $290 fee, had a general intent to take and receive a rate of interest in excess of 8.5%, the prevailing rate.
Where, as here, usury cannot be discerned from the four corners of the mortgage instrument, it was properly the function of the trier of fact to determine whether an error in the description of the bank charge was bona fide or a clandestine attempt to exact a usurious rate of interest. Had the Legislature intended to make usury a strict liability offense, where intent under all circumstances would be irrelevant, it would have so provided.
*266 Accordingly, the order of the Appellate Division should be affirmed, with costs.
SIMONS, J. (dissenting).
I would reverse and grant judgment to plaintiffs because defendant charged them an unlawful rate of interest, not through excusable mistake, but knowingly. Having established that, plaintiffs had no obligation to go further and prove that defendant did so "clandestinely" with the specific intent to violate the usury laws or that its conduct amounted to a "subterfuge" or "ruse" to do so.
Analysis starts with the statute which prohibits savings and loan institutions from "knowingly taking, receiving, reserving, or charging * * * interest * * * at a rate greater than * * * authorized by law" (Banking Law, § 380-e). The rate authorized by law at the time of this transaction was 8½% which, the statute says, shall include "all amounts paid or payable, directly or indirectly * * * to or for the account of the lender in consideration for the making of a loan" (Banking Law, § 14-a, subd 2, par [b] [now § 14-a, subd 2]). The regulations adopted pursuant to the Banking Law similarly provide that the maximum mortgage interest allowed (i.e., 8½%) shall include origination fees, points and other discounts "and all other amounts paid or payable, directly or indirectly * * * to or for the account of the lender in consideration for making the loan" (3 NYCRR 4.1, 4.2 [emphasis added]). The language of these provisions could hardly state more broadly that the legal rate shall be computed after considering all amounts paid to the lender by the buyer and that the total shall not exceed 8½%. There are no exceptions other than those specific charges enumerated in section 4.3 of the regulations and they may be excluded from the computation of interest only if itemized (3 NYCRR 4.2, 4.3). The additional 1% charge assessed plaintiffs by defendant in this case was not one of the exceptions listed. Neither was it itemized by defendant.
The only exception contained in section 4.3 of the regulations relevant to this appeal is the exception dealing with charges for periodic inspections related to advances to be made under a loan agreement (3 NYCRR 4.3 [b] [7]). It is questionable whether periodic inspections of plaintiffs' *267 premises were made, but paragraph 7 does not apply in any event because no advances were made to plaintiffs. The entire principal was paid over at the closing on August 24, 1978, after the building was completed. Thus, during the first year of the loan plaintiffs paid defendant a total consideration of 9½% for the loan, 8½% interest plus an additional 1% for the unauthorized "Commitment Fee". Since the law forbids the exaction of interest greater than 8½% and provides that all sums paid shall be considered interest unless exception is specifically authorized and itemized, it is manifest that the loan was usurious.
Conceding that the 1% charge was wrongfully assessed and must be returned, the majority hold, somewhat inconsistently, that the charge was for a lawful purpose and that it was made by mistake. Thus, it finds that plaintiffs failed to prove usurious intent.
The general rule is that the intent required to establish usury is the general intent to act contrary to the statute, not a specific intent to commit usury. This rule is consistent with the Banking Law's use of the term "knowingly". "Knowingly" imports knowledge that the facts exist which constitute the offense, not knowledge of the unlawfulness of the act (see People v Shapiro, 4 N.Y.2d 597, 600; People v Ahrend Co., 308 N.Y. 112; Myers v U. S. Camera Pub. Corp., 9 Misc 2d 765, 768; see, also, Black's Law Dictionary [5th ed], p 784). Thus, once excessive interest is charged, the intent to violate the statute will be implied (see, generally, 91 CJS, Usury, § 14; 32 NY Jur, Interest and Usury, §§ 72, 73). In most cases, the nature of the transaction establishes the excessive charge and the finding of intent follows from it (see, e.g., Giventer v Arnow, 37 N.Y.2d 305; Fiedler v Darrin, 50 N.Y. 437; Angelo v Brenner, 90 AD2d 131; Hammond v Marrano, 88 AD2d 758; Reschke v Eadi, 84 AD2d 904; Matter of Dane, 55 AD2d 224). To be distinguished, however, are cases in which the facts are disputed and the transaction on its face appears legal or is ambiguous. Presumably, parties do not intentionally violate the law and in those cases extrinsic evidence is necessary to clearly establish the offense (Brown v Robinson, 224 N.Y. 301, 318; White v Benjamin, 138 N.Y. 623, 624). Thus, a corrupt intent must be established where it does *268 not clearly appear that the transaction was a loan (see, e.g., Brown v Robinson, supra; Meaker v Fiero, 145 N.Y. 165), or that unlawful interest was exacted for it (see, e.g., Rosenstein v Fox, 150 N.Y. 354; McNellis v Dubnoff, 367 F.2d 513).
There is nothing ambiguous about this case or the inferences which must be drawn from the established facts. Defendant loaned money to plaintiffs by a mortgage transaction and it charged and received more interest for the loan than the law allows. Usurious intent is implied, therefore, unless defendant did so because of an excusable mistake.
Mistakes can be categorized as mistakes of fact or mistakes of law. Generally, when a person makes a mistake of fact, his act may be excusable because his act does not represent the performance he intended. Clerical or arithmetical mistakes fall into this category (see Marvine v Hymers, 12 N.Y. 223; Archibald v Thomas, 3 Cow 284) and so do computer errors (see Heelan v Security Nat. Bank, 73 Misc 2d 1004). When a party makes a mistake in the law, however, he is bound by his action even though he would have acted otherwise had he not been ignorant of the law (see Vee Bee Serv. Co. v Household Fin. Corp., 51 NYS2d 590, 611, affd 269 App Div 772; and see, generally, Usury as Affected by Mistake in Amount or Calculation of Interest or Service Charges for Loan, Ann., 11 ALR3d 1498). The defendant's act of charging an additional 1% "Commitment Fee" was a deliberate and purposeful act, not a mistake in calculation, and it does not excuse defendant from the consequences. The reason for the rule is obvious enough: the lender would rarely be chargeable with knowledge or unlawful intent if free to claim, after the fact, ignorance of the interest rate or of the laws and regulations. That is precisely what defendant bank claims here, that it acted in good faith and was unaware of the banking statute and regulations or of the true nature of the transaction with plaintiffs. If the usury laws are to mean anything, that simply is not excuse enough.
The concern, of course, is the windfall to the borrowers, but any "windfall" is lawful, sanctioned by the statute because of New York's strong public policy against lenders *269 exacting excessive interest. If the statute and regulations effectuating that policy are not enforced, then lenders may, either by sharp or shoddy practice, experience another type of windfall, an illegal one, by imposing excessive fees and charges on their customers.
Order affirmed, with costs.
NOTES
[1] Inasmuch as no cross appeal has been filed by the defendant to test the propriety of this finding, we do not reach the question.
[2] Section 380-e of the Banking Law provides, in pertinent part: "The knowingly taking, receiving, reserving, or charging by a savings and loan association of interest, as computed pursuant to this article, at a rate greater than such rate of interest as may be authorized by law shall be held and adjudged a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person paying the same or his legal representatives may recover from the savings and loan association twice the entire amount of the interest thus paid."
[3] The dissent's reliance upon Vee Bee Serv. Co. v Household Fin. Corp. (51 NYS2d 590, affd without opn 269 App Div 772) is misplaced. The Vee Bee case, which is actually an expansive report of a court-appointed referee, is hardly controlling upon the issue of the effect of mistakes upon loan agreements. Vee Bee is factually dissimilar insofar as it concerns a dispute between large lending institutions arising from a nationwide scheme which doubled the rate of interest upon hundreds of transactions.
[4] The statement of the dissent that "[i]t is questionable whether periodic inspections of plaintiffs' premises were made" is simply incorrect. The trial court made a factual determination that inspection services were rendered by the bank, and the amount charged for such services, as well as services for processing the loan "is not so disproportionate to the actual services rendered as to lead to a conclusion that it was a subterfuge to collect illegal interest."