OPINION OF THE COURT
Kaye, J.
Where an extension agreement for the repayment of a debt is void, because of a usurious rate of interest, the invalidity of that agreement does not extinguish defendants’ liability to plaintiff for the debt under the parties’ original contract.
Plaintiff rendered legal services to defendants pursuant to a November 12,1974 retainer agreement, with agreed hourly fees to be paid partly at the rate of $500 a month and partly upon the disposition of certain litigation. When defendants terminated the representation in February 1976, they owed plaintiff *127 $17,965 in fees and disbursements, which the parties compromised for $16,000 in a letter agreement dated February 11,1976 signed by all defendants. The agreement provided for payment by defendants of $6,000 at the rate of $150 per month, and $10,000 upon the conclusion of the suits. After defendants once again defaulted in late 1980, plaintiff delivered a summons and complaint to a process server and also recommenced negotiations with defendants. Instead of actually beginning his action, however, plaintiff entered into 1980 and 1981 letter agreements with defendants setting forth new payment schedules. These agreements required defendants for the first time to pay interest, retroactive to 1976, at the rate of “10 per cent on the unpaid balance as of January 1 of each year.”
Defendants defaulted yet again, and plaintiff in April 1982 commenced the present action to recover $11,539 allegedly still owing under the agreements. Defendants asserted as a defense that the agreements were usurious and therefore void. Special Term granted plaintiff’s motion for summary judgment, reasoning, as to the individual defendants, that because “the supposedly excessive rate of interest was only charged after defendants’ obligation to pay matured, it is not usurious”, and, as to the corporate defendant, that the defense of usury is not available. The Appellate Division unanimously affirmed, stating that because “the contractual rate of 10% was permissible ‘at the time the * * * forbearance [was] made’ (General Obligations Law, § 5-501, subd 4), the [1980 and 1981] agreements do not call for a usurious rate of interest” (98 AD2d 759, 760).
Although we agree with the courts below that the defense of usury is unavailable to the corporate defendant, and that the 1980 and 1981 letter agreements can be enforced against the corporation (see, General Obligations Law § 5-521 [1]), we cannot agree with the conclusion that, as to the individual defendants, those agreements were not usurious. The fact that the agreements related to an antecedent debt does not save them from the reach of General Obligations Law § 5-501 (1), which provided that “[t]he rate of interest * * * upon the loan or forbearance of any money, goods, or things in action * * * shall be the rate prescribed by the banking board pursuant to [Banking Law § 14 (1) (g)],” or of General Obligations Law § 5-511, which provides generally that any contract specifying interest at a greater sum shall be void. (See, London v Toney, 263 NY 439,442.) The 1980 and 1981 agreements were concededly made in consideration of plaintiff’s forbearance from suit — the summons and complaint were already in the hands of a process *128 server — and are therefore “forbearances” within the usury law (cf. Stitz v Stevens, 70 AD2d 588, 588-589, affd 48 NY2d 957).
Nor does the fact that the legal rate of interest was increased in 1980 and 1981 immunize the agreements. While the 10% annual interest rate was legal beginning August 1, 1979, the agreements applied that rate back to periods when the maximum interest was 8.50% (Jan. 1, 1976 to Dec. 7, 1978), 9.50% (Dec. 8, 1978 to Apr. 30, 1979), and 9.75% (May 1, 1979 to July 31, 1979) (see, 3 NYCRR 4.1). Without reaching the question of how provisions for retroactive interest should be regarded in other circumstances, here the interest rate specified for periods prior to August 1, 1979 was on its face in excess of the legal rate.[1]
Plaintiff argues that section 5-501 (4) of the General Obligations Law, which provides that “interest shall not be charged, taken or received on any loan or forbearance at a rate exceeding such rate of interest as may be authorized by law at the time the loan or forbearance is made, whether or not the loan or forbearance is made pursuant to a prior contract or commitment providing for a greater rate of interest” (General Obligations Law § 5-501 [4]), by negative implication authorized him in 1980 retroactively to exact interest in excess of the legal rates in effect from 1976 to 1979 so long as that rate is “authorized by law at the time the loan or forbearance is made”. Reliance on this provision — which appears to have formed the basis for the Appellate Division decision — is misplaced.
In enacting section 5-501 (4), part of a statutory scheme designed to transfer authority for fixing the legal rate of interest to certain administrative agencies (see, L 1968, ch 349), the Legislature intended to carve out an exception to the general rule that preexisting loans or forbearances do not become usuri *129 ous as a result of decreases in the maximum interest rate (General Obligations Law § 5-501 [4-a]). The Legislature determined that by preventing parties from agreeing just prior to an imminent decrease in the legal rate of interest[2] to make a loan or forbearance at the then-prevailing higher rate effective after the decrease, it could “assure that the rate of interest at which the loan or forbearance is made reflects economic conditions then prevailing” (Memorandum of State Banking Department, 1968 NY Legis Ann, “Corporations and Banking”, at 136). This statute, in short, does not sanction the retrospective application of the higher interest rates in effect when an agreement is made to prior periods governed by lower rates, but serves a quite different purpose.
Similarly, the 1980 and 1981 agreements are not excluded from the usury law as agreements providing for a legal rate of interest prior to maturity of an obligation or default thereon and an interest rate greater than the legal rate thereafter (see, Bloom v Trepmal Constr. Corp., 29 AD2d 951, affd 23 NY2d 730; Heelan v Security Natl. Bank, 73 Misc 2d 1004, 1008). Defendants enjoyed no power under the 1980 and 1981 agreements to avoid the payment of excessive interest; there was no condition within defendants’ control in those agreements whereby defendants could avoid paying more than the legal rate of interest (see, Diehl v Becker, 227 NY 318, 325-326).
But the fact that the 1980 and 1981 agreements may be unenforceable against the individual defendants does not mean that their underlying debt is extinguished (see, Perkins v Hall, 105 NY 539, 542; Cook v Barnes, 36 NY 520, 521). To the contrary, “[w]hen a contract for money, legal and innocent in itself, is once made and consummated, it cannot be made usurious and illegal by any subsequent transactions of the parties. These subsequent transactions may of themselves be illegal, and forbidden by law, but they cannot impart the taint and the consequences of usury to an antecedent agreement, fair, and just, and upright in itself. If the obligation under it is to pay a debt, the obligation, with the legal rights resulting from it, remain in all their force, and cannot be discharged by ingrafting upon it some subsequent agreement obnoxious to the charge of usury” (Lesley v Johnson, 41 Barb 359, 362; accord, London v Toney, 263 NY 439,441, supra; Real Estate Trust Co. v Keech, 69 *130 NY 248, 249; Emmons v Barnes, 55 NY 643, 644; Winsted Bank v Webb, 39 NY 325, 331; Bush v Livingston, Lock Revd Cas 550; Eastern Shopping Centers v Contro, 68 Misc 2d 140,142-143; 6A Corbin on Contracts § 1506, at 698; Webb, Law of Usury §§ 306-307 [1899]; Tyler, Law of Usury, at 111 [1878]). Thus, while plaintiff cannot enforce the 1980 and 1981 agreements against the individual defendants, nothing precludes him from collecting upon the underlying debt embodied in the 1976 agreement.[3]
Accordingly, the order of the Appellate Division should be modified and the case remitted to Supreme Court, Kings County, for further proceedings in accordance with this opinion, including calculation of the amount the individual defendants owe plaintiff under the 1976 agreement, less any payments against that indebtedness, together with interest from the date of breach, and as so modified, the order should be affirmed.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons and Alexander concur; Judge Titone taking no part.
Order modified, without costs, and case remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

. Despite the explicit provision for interest at the rate of 10%, plaintiff and defendants differ sharply on the “actual” rate — plaintiff arguing that the actual rate is only 7.42%, and defendants contending that the rate is at least 391/2%, constituting criminal usury (Penal Law § 190.40), an issue we do not reach because it was not raised in the courts below (see, Hammelburger v Foursome Inn Corp., 54 NY2d 580, 590-592). Plaintiff’s calculation is premised on the retrospective application of the 10% interest rate to the entire unpaid principal as of January 1, 1977, and each January 1 thereafter, including substantial amounts that had been paid by defendants and were no longer owing at the time of the 1980 and 1981 agreements. Such a construction obliterates the distinction between a loan (represented by the 1976 agreement) and a forbearance, or extension agreement — a new transaction — represented by the 1980 and 1981 agreements. Plaintiff cannot retrospectively apply an interest rate in an extension agreement to money previously paid pursuant to the original loan and thereby circumvent the usury laws.

. Like any change in the rate, decreases were to be announced by the Banking Board or Superintendent of Banking (see, L 1968, ch 349, § 3, adding Banking Law § 14-a [3], repealed L 1978, ch 788, § 1; L 1978, ch 788, § 2, adding Banking Law § 14-a [3], repealed L 1980, ch 883, § 2).

. The only other defenses raised in the answer are the Statute of Limitations (patently inapplicable to bar suit brought in April 1982 on a contract not breached until late 1980), that plaintiff breached his agreement and abandoned employment (on its face contradicted by statements of defendants and acknowledgments of their long overdue indebtedness), and that the agreements were not made in writing and subscribed by defendants (which, certainly as to the 1976 agreement, is frivolous on this record).